STATE OF NORTH CAROLINA v. LARRY FREMONT MOROCCO

No. 8912SC1142

(Filed 17 July 1990)

1. **Searches and Seizures § 9 (NCI3d)— trafficking in cocaine— traffic stop not pretextual**

    The findings in a cocaine trafficking prosecution supported the trial court's conclusion that a traffic stop on I-95 for not wearing a seat belt was not pretextual. In determining whether a traffic stop was pretextual, the trial court should look at what a reasonable officer *would* do rather than what an officer validly *could* do; the traffic court here concluded that a reasonable officer in the position of Trooper Lowry *would* have stopped defendant for a seat belt violation and there was competent evidence in the record to support the findings in that Trooper Lowry testified that he observed defendant riding without a seat belt, that he stopped defendant for that reason, and that it is the policy of North Carolina to enforce the seat belt law.

    **Am Jur 2d, Searches and Seizures § 39.**

2. **Searches and Seizures § 8 (NCI3d)— consent to search—given while in patrol car—no illegal seizure**

    A defendant in a cocaine trafficking prosecution was not illegally detained so that his consent to a search of his car was not rendered involuntary where the officer engaged defendant in polite conversation in his patrol car while writing a warning citation for not wearing a seat belt; after returning defendant his driver's license and vehicle identification papers as well as a citation, the officer requested permission to search defendant's vehicle for contraband; the findings show that defendant consented and waited three minutes while the officer prepared a consent form for him to sign; defendant was a six foot, 200 pound, thirty-eight-year-old man with prior military

service; and defendant's spoken consent carried with it an implied willingness to wait for the officer to fill out the consent form. Defendant briefly remained in the patrol car voluntarily in a spirit of apparent cooperation and was not illegally seized; however, voluntariness cannot be assumed in all cases where a driver is questioned while sitting in an officer's car.

**Am Jur 2d, Searches and Seizures §§ 47, 48, 53.**

3. **Searches and Seizures § 14 (NCI3d)— cocaine trafficking— search of vehicle—consent**

The trial court's conclusion in a cocaine trafficking prosecution that defendant consented to a search of his vehicle was supported by the findings and the findings were supported by competent evidence where the patrolman's testimony tended to show that in the course of polite conversation he merely asked whether defendant would consent to a search and the trial court rejected as incredible the defendant's testimony that the patrolman stated that he was going to search the vehicle one way or the other, if he had to bring his buddies in and get a search warrant. The trial court was in the best position to observe the demeanor of the witnesses and chose to believe the trooper.

**Am Jur 2d, Searches and Seizures §§ 47, 48, 53.**

4. **Searches and Seizures § 38 (NCI3d)— cocaine trafficking— search of vehicle by consent—tote bag in vehicle**

A highway patrolman did not exceed the scope of defendant's consent for the search of his vehicle by searching a tote bag found therein. The defendant's consent to search the automobile for contraband entitled the officer to conduct a reasonable search anywhere inside the automobile which might reasonably contain contraband, including the tote bag in the back seat. The trial court did not err as a matter of law in determining that defendant never withdrew his consent based on the ambiguous statement that the bag contained nude photographs of his wife.

**Am Jur 2d, Searches and Seizures §§ 47, 48, 53.**

5. **Narcotics § 5 (NCI3d)— trafficking in cocaine—sentencing— assistance to law enforcement authorities not considered**

The trial court judge did not abuse his discretion when sentencing defendant for trafficking in cocaine by finding that

defendant's evidence of substantial assistance to law enforcement authorities was insufficient under N.C.G.S. § 90-95(h)(5). A finding that a criminal defendant's aid amounts to substantial assistance is discretionary.

**Am Jur 2d, Criminal Law § 599; Drugs, Narcotics, and Poisons § 48.**

APPEAL by defendant from judgment entered 30 May 1989 by *Judge Wiley F. Bowen* in CUMBERLAND County Superior Court. Heard in the Court of Appeals 1 June 1990.

*Lacy H. Thornburg, Attorney General, by Clarence J. DelForge, III, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

GREENE, Judge.

The defendant, Larry Fremont Morocco, entered a plea of guilty to trafficking in cocaine by possession and to trafficking in cocaine by transportation, reserving his right to appeal the denial of his motion to suppress. Defendant now appeals that denial as well as matters concerning his sentencing.

After hearing testimony and arguments on defendant's motion to suppress, the trial court made the following findings of fact.

1. Trooper L.E. Lowry is a trooper with the North Carolina State Highway Patrol. He has been with the North Carolina State Highway Patrol for 14 years. He is trained in the detection and enforcement of the motor vehicle laws of North Carolina.

2. On June 28, 1988, at approximately 7:40 a.m., Trooper Lowry was on duty in the area of Interstate 95 and N.C. Highway 24. He had just finished an enforcement stop and was in the process of crossing the median on Interstate 95 to travel back to N.C. Highway 24. While waiting for traffic to pass, he observed a 4-door brown AMC vehicle operated by the defendant, Larry Fremont Morocco. The defendant appeared not to be wearing a properly fastened seatbelt. In North Carolina, this is an offense for which an officer may issue a citation.

3. Trooper Lowry drove onto Interstate 95 behind the defendant's vehicle and accelerated into the lefthand lane to the left side of the defendant's vehicle until his patrol vehicle was even with the defendant's vehicle. Trooper Lowry observed that the defendant was the only person in the vehicle and that he was operating the vehicle at approximately 65 miles per hour, within the posted speed limit. Trooper Lowry observed that the defendant was operating the brown AMC vehicle without a properly fastened seatbelt.

4. Trooper Lowry turned on his blue light and siren equipment, decelerated and drove behind the defendant's vehicle to indicate to the defendant to stop. The defendant's vehicle slowed down and pulled over to the right hand shoulder of the road.

5. Trooper Lowry walked up to the driver's side of the vehicle. He requested the defendant to produce a valid driver's license and vehicle registration. The defendant produced a Pennsylvania Driver's License bearing the name Larry Fremont Morocco, License Number 14761811, and identification papers for the vehicle. The vehicle bore a Pennsylvania registration plate number JPK-939. The defendant stated to Trooper Lowry that the car belonged to the defendant's brother.

6. Trooper Lowry told the defendant that he was stopped for a seatbelt violation and that he would give him a warning ticket. Trooper Lowry asked the defendant to step back to the patrol vehicle and sit in the front passenger seat so that he could issue the ticket. The defendant got out of his vehicle, walked back to the patrol vehicle and sat in the front passenger seat.

7. While Trooper Lowry was writing the warning ticket, he and the defendant had a conversation. Trooper Lowry asked the defendant about the vehicle and its registration. The defendant told him information about the vehicle registration and stated that he had been to Florida and was on his way back to Pennsylvania. Trooper Lowry's manner and speech were polite and non-hostile. Trooper Lowry handed the defendant the warning ticket, the Pennsylvania driver's license and the vehicle identification papers.

8. Trooper Lowry asked the defendant if he could search his vehicle. Trooper Lowry explained to the defendant that he wanted to search his vehicle for any illegal weapons, alcohol or contraband. The defendant understood Trooper Lowry's request to search. The defendant told Trooper Lowry that he could search his vehicle. Trooper Lowry filled out a Consent to Search Form and requested the defendant to read and sign the form. The defendant read the form and signed his name at the bottom of the form. Approximately three minutes passed between the time Trooper Lowry gave the defendant his warning ticket for the seatbelt violation and the time the defendant signed the Consent to Search Form. Trooper Lowry did not make any threats to the defendant in order to obtain the defendant's consent to search the brown AMC vehicle.

9. Trooper Lowry and the defendant got out of the patrol vehicle. Trooper Lowry briefly patted down the defendant for weapons. He found none. The defendant removed the vehicle's ignition keys from the ignition and opened the trunk for Trooper Lowry. Trooper Lowry searched the trunk area. The defendant used the keys to unlock the back passenger door for Trooper Lowry. Trooper Lowry found a tote bag on the back seat. [H]e searched the tote bag and found what he believed to be the controlled substance, cocaine.

10. During the search of the car, Trooper Lowry did not restrain the defendant's movement. At all times during the search, the defendant was in sole possession of the vehicle's keys, his driver's license and the vehicle identification papers. The defendant was free to leave.

11. The defendant never withdrew his consent to search.

12. The search of the defendant's vehicle was within the scope of the defendant's consent.

13. Trooper Lowry was the only officer at the scene. He never threatened the defendant. At all times, Trooper Lowry's weapon was in his holster.

14. The defendant, Larry Fremont Morocco, is a white male, 38 years old, six feet tall and weighs approximately 200 pounds. He has completed 12 years of school and has attended various trade schools for carpentry and kitchen cabinet work. The defendant speaks and understands the English

language. The defendant's contentions that the officer threatened him are not credible.

The court then concluded as a matter of law that:

1. The Defendant, Larry Fremont Morocco, was stopped by Trooper Lowry for a violation of the North Carolina seatbelt law. The stop of the defendant's vehicle was based on parobable [sic] cause that the defendant was violating the seatbelt law. *Delaware v. Prouse*, 440 U.S. 648 (1979); *United States v. Cortez*, 449 U.S. 411 (1981). In light of the facts and circumstances in this case, a reasonable officer in the position of Trooper Lowry would have stopped the defendant for a seatbelt violation.

2. After the traffic violation stop, the defendant gave Trooper Lowry consent to search the vehicle and its contents. The defendant spoke and understood the English Language. The defendant was free to leave at anytime. Trooper Lowry did not threaten or coerce the defendant to give consent. The consent was freely, intelligently and voluntarily given. *Schneckcloth v. Bustamonte*, 412 U.S. 218 (1973).

3. None of the Defendant's rights under the United States Constitution or the North Carolina Constitution were violated.

At his sentencing hearing, defendant requested that the trial court find that he had rendered substantial assistance to law enforcement authorities based on his post-arrest statements to both the arresting trooper and State Bureau of Investigation personnel regarding the source of his cocaine and regarding assistance allegedly provided to law enforcement officials in Pennsylvania. The trial court refused defendant's request on the grounds that the defendant failed to assist "to the best of his knowledge."

_____

The issues presented are: (I) whether the trial court erred in denying defendant's motion to suppress because (A) defendant was illegally seized, (B) the defendant did not consent to the search, or (C) the search exceeded the scope of the consent; and (II) whether the sentencing court erred in failing to find that defendant rendered substantial assistance to law enforcement authorities.

I

A

[1]   The defendant argues the trial court erred in denying his motion to suppress because he was illegally seized. He first asserts that the traffic stop was pretextual. A police officer may conduct a brief investigative stop of a vehicle where justified by specific, articulable facts which give rise to a reasonable suspicion of illegal conduct. *See, e.g., United States v. Brignoni-Ponce*, 422 U.S. 873, 880, 45 L.Ed.2d 607, 616 (1975); *Terry v. Ohio*, 392 U.S. 1, 27, 20 L.Ed.2d 889, 909 (1968). However, police may not make *Terry*-stops merely on the pretext of a minor traffic violation. *United States v. Smith*, 799 F.2d 704, 710-11 (11th Cir. 1986).

In determining the traffic stop was pretextual, the trial court should look at what a reasonable officer *would* do rather than what an officer validly *could* do. *Id.* Applied to the case at hand, the question is whether a reasonable officer would have stopped the defendant for failure to wear a seat belt, not whether an officer could have done so.

The trial court made the required findings of fact and conclusions of law on this issue, and we are bound by the findings if they are supported by competent evidence. *State v. Crews*, 286 N.C. 41, 45, 209 S.E.2d 462, 465 (1974), *cert. denied*, 421 U.S. 987, 44 L.Ed.2d 477 (1975). However, in determining whether an individual is in custody or whether the stop was pretextual, we are not bound by the trial court's conclusion. *See State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 583 (1982). The trial court found that Trooper Lowry observed the defendant not wearing a properly fastened seat belt, "an offense for which an officer may issue a citation." The trial court concluded that "a reasonable officer in the position of Trooper Lowry *would* have stopped the defendant for a seat belt violation." (Emphasis added.) We find in the record competent evidence to support the findings. Trooper Lowry testified that he observed the defendant driving without a seat belt, that he stopped the defendant for that reason, and that it is the policy of North Carolina to enforce the seat belt law. Furthermore, we determine the findings support the trial court's conclusion.

[2]   The defendant also argues that even if the stop was not pretextual, the trooper detained the defendant longer than necessary to issue a warning ticket. "The scope of the detention must be

carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500, 75 L.Ed.2d 229, 238 (1983). The trial court found that Trooper Lowry engaged the defendant in polite conversation while writing the warning citation. After returning to the defendant his driver's license and vehicle identification papers as well as the citation, Lowry requested permission to search the defendant's vehicle for contraband. The findings show the defendant consented and waited three minutes while Lowry prepared a consent form for him to sign.

The defendant argues that he was illegally detained for the three minutes. We find this case analogous to that addressed in *United States v. Mendenhall*, 446 U.S. 544, 64 L.Ed.2d 497, *reh'g denied*, 448 U.S. 908, 65 L.Ed.2d 1138 (1980). There police officers briefly questioned a traveler in an airport and then requested her to accompany them to their office for further questioning. The defendant acquiesced. The issue was whether the defendant was seized in violation of the Fourth Amendment when the officers asked her to accompany them such that the subsequent search of the defendant's person was infected by the violation. "The question whether the respondent's consent to accompany the agents was in fact voluntary or was the product of duress or coercion, expressed or implied, is to be determined by the totality of all the circumstances. . . ." *Id.*, at 557, 64 L.Ed.2d at 511. In that case the defendant was a twenty-two-year-old black female who had an eleventh-grade education. Furthermore, she:

> was not told that she had to go to the office, but was simply asked if she would accompany the officers. There were neither threats nor any show of force. The respondent had been questioned only briefly, and her ticket and identification were returned to her before she was asked to accompany the officers.

*Id.*, at 557-58, 64 L.Ed.2d at 512. The Supreme Court concluded that the facts supported the trial court's finding that the defendant "accompanied the agent to the office 'voluntarily in a spirit of apparent cooperation.'" *Id.*, at 557, 64 L.Ed.2d at 511.

We determine that this trial court's findings likewise are supported by competent evidence. The defendant was a six-foot, 200-pound, thirty-eight-year-old man with prior military service. Trooper Lowry had returned all of the defendant's belongings and had issued the warning ticket. Furthermore, defendant's spoken consent carried with it an implied willingness to wait for Lowry

to fill out the consent form. Thus, we conclude the defendant briefly remained in the patrol car "voluntarily in a spirit of apparent cooperation." He was not illegally seized. We caution, however, that we do not hold that voluntariness can be assumed in all cases where a driver is questioned while sitting in an officer's car. Under some circumstances a reasonable person might feel compelled to acquiesce in a police officer's request that he remain in the police car.

### B

[3] The defendant next argues that he did not consent to the search of his vehicle. When, as here, the State seeks to rely upon defendant's consent to support the validity of a search, it has the burden of proving that the consent was voluntary. *State v. Hunt*, 37 N.C. App. 315, 321, 246 S.E.2d 159, 163 (1978); *Schneckcloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed.2d 854 (1973). Voluntariness is a question of fact to be determined from all of the surrounding circumstances. *State v. Williams*, 314 N.C. 337, 344, 333 S.E.2d 708, 714 (1985). Again, we are bound by the trial court's findings of fact which are supported by competent evidence. *Id.*, at 345, 333 S.E.2d at 715. "However, the conclusions of law drawn from those findings are reviewable by the appellate courts." *Id.*, at 346, 333 S.E.2d at 715.

Competent evidence clearly exists to support the trial court's findings. Trooper Lowry's testimony tends to show that in the course of polite conversation he merely asked whether the defendant would consent to a search. The trial court rejected as incredible the defendant's testimony that Lowry stated, "I'm going to search your vehicle one way or the other, if I have to bring my buddies in, and I will get a search warrant." Indeed, such a ploy would be improper, but we must defer to the trial court since it was in the best position to observe the demeanor of the witness and chose instead to believe the trooper who denied making such a statement. *State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601, *cert. denied*, 403 U.S. 934, 28 L.Ed.2d 715 (1971). We also hold that the findings support the trial court's conclusion of voluntary consent.

### C

[4] The defendant next argues that even if he consented to Trooper Lowry's search of the vehicle, Lowry exceeded the scope of the consent by searching defendant's tote bag found therein. We disagree.

STATE v. MOROCCO

[99 N.C. App. 421 (1990)]

"When the State relies upon consent as a basis for a warrantless search, the police have no more authority than they have been given by the consent." *State v. Jolley*, 68 N.C. App. 33, 38, 314 S.E.2d 134, 137, *rev'd on other grounds*, 312 N.C. 296, 321 S.E.2d 883 (1984), *cert. denied*, 470 U.S. 1051, 84 L.Ed.2d 816 (1985). The defendant's consent to search the automobile for contraband entitled Lowry to conduct a reasonable search anywhere inside the automobile which reasonably might contain contraband including the tote bag in the back seat. *See State v. Belk*, 268 N.C. 320, 150 S.E.2d 481 (1966) (consent search of part of automobile beyond officer's vision reasonably included contents of paper bag between passenger's legs); *see also State v. Leonard*, 87 N.C. App. 448, 453, 361 S.E.2d 397, 400, *appeal dismissed, rev. denied*, 321 N.C. 746, 366 S.E.2d 867 (1987); LaFave & Israel, *Criminal Procedure* § 3.10 (1984).

Defendant also contends that he withdrew his consent for Lowry to search the tote bag by telling him the bag contained some nude photographs of his wife. That defendant made this statement is uncontested. However, we cannot say, as a matter of law, that the trial court erred in determining that the defendant never withdrew his consent based on such an ambiguous statement. We find no error in the trial court's denial of defendant's motion to suppress.

II

[5] Regarding his sentencing, the defendant argues that the trial court erred by declining to consider his evidence of substantial assistance to law enforcement authorities. We disagree.

[T]he sentencing judge may reduce the fine, or impose a prison term less than the applicable minimum term provided by this subsection, or suspend the prison term imposed and place a person on probation when such person has, to the best of his knowledge, provided substantial assistance in the identification, arrest, or conviction of any accomplices, accessories, co-conspirators, or principals if the sentencing judge enters in the record a finding that the person to be sentenced has rendered such substantial assistance.

N.C.G.S. § 90-95(h)(5) (Cum. Supp. 1989).

"[W]hether a trial court finds that a criminal defendant's 'aid' amounts to 'substantial assistance' is *discretionary*." *State v. Hamad*,

92 N.C. App. 282, 289, 374 S.E.2d 410, 414 (1988), *aff'd per curiam*, 325 N.C. 544, 385 S.E.2d 144 (1989) (emphasis in original). The defendant presented evidence of what he considered were his efforts to provide substantial assistance. Contrary to the defendant's assertion on appeal, the trial court considered this evidence and found that "the evidence pertaining to the substantial assistance is insufficient to support a finding that the Defendant has in fact, in good faith, and to the best of his knowledge, rendered substantial assistance." We find nothing in the record to indicate the trial court abused its discretion in so finding. Here, we find no error in the trial court's exercise of its discretion.

No error.

Judges ORR and LEWIS concur.