**UNITED STATES of America**

v.

**Larry Reginald CARTLEDGE.**

**No. CR–89–273–01–S.**

United States District Court,
M.D. North Carolina,
Salisbury Division.

Aug. 10, 1990.

Lisa B. Boggs, Asst. U.S. Atty., Greensboro, N.C., for plaintiff.

Edward A. Fiorella, Jr., Charlotte, N.C., for defendant.

## ORDER

ERWIN, Chief Judge.

This matter is before the court upon defendant's motion to suppress items seized by law enforcement officers on October 11, 1989 from the defendant and his automobile, pursuant to Rule 12 of the Federal Rules of Criminal Procedure and the Fourth and Fourteenth Amendments to the United States Constitution. The Government opposes this motion on several grounds. After considering the briefs submitted, arguments of counsel, and the evidence presented at a hearing on April 19, 1990, this court grants defendant's motion.

### Factual Background

On October 11, 1989, the defendant was driving a 1984 Chevrolet Corvette north on Interstate 85 in Rowan County, near the Town of China Grove. The defendant passed a marked North Carolina Highway Patrol vehicle which was parked in the median. Approximately a mile later, the state highway patrol officer approached defendant's vehicle and travelled parallel with him. Shortly thereafter, the state trooper flashed his blue lights and ordered the defendant to pull over. Trooper A.C. Combs stopped the vehicle and issued the defendant a citation for failure to wear a seat belt. As the defendant turned to leave, Trooper Combs asked him whether he had a weapon. The defendant replied that he had a gun, and the officer retrieved the weapon. The trooper then requested that Mr. Cartledge sign a consent to search form. After the consent form was signed, the trooper noticed two large bulges in the defendant's front pockets. He patted down the defendant and found $3,227 in his pockets. Several other state officers were called to the scene and conducted an extensive search of the defendant's automobile, where $21,625 was found in a grocery bag. The officers seized the money found and turned it over to the State Bureau of Investigation.

The defendant was thereafter indicted for possession of a firearm by a felon in violation of 18 U.S.C.A. § 922(g)(1) (West 1986). The charge relating to the defendant's citation for failure to wear his seat belt pursuant to N.C.Gen.Stat. § 20–135.2A (1985) was dismissed.

### Discussion

The defendant moves to suppress evidence gathered from the search of his automobile pursuant to Rule 12 of the Federal Rules of Criminal Procedure and the Fourth and Fourteenth Amendments to the United States Constitution. Defendant's main contention is that the stop preceding the search was made without probable cause.

"[I]n determining whether the search and seizure were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the initial interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). The defendant contends that the traffic stop was

based upon a pretext to allow the state to conduct a search of defendant's automobile. He asserts and the Government concedes that the trooper's only justification for stopping the defendant was for failing to wear his seat belt. No other traffic violation was alleged.

The defendant contends that the stop was pretextual because the highway patrol officer began to pursue his vehicle before he had any information as to whether the defendant was wearing the seat belt. At the hearing, Defense Counsel Fiorella asked Trooper Combs:

Q: And Trooper, you said you left the stationary radar check when you saw a car that was not speeding and had tinted windows to go ahead and check to see whether or not the safety belts were on, is that correct?

A: Yes, sir. I couldn't see in the vehicle when it went by so I pursued same, pulled up beside it and looked in.

Transcript of Hearing, p. 19. The defendant argues that Trooper Combs could not possibly determine whether Mr. Cartledge or the passenger in the vehicle had their seat belts fastened because of the particularly dark tint on the windows. Mr. Cartledge testified that he was wearing a seat belt but disengaged it after he was stopped.

Defendant argues that the real motive of Trooper Combs' stop was revealed after the traffic citation was issued, and the trooper began to interrogate him. Mr. Cartledge testified that after the citation was issued and he was told where to report, Trooper Combs asked him if he had a weapon, and he replied that he did. The trooper concurs in his recollection of the event. After the gun was seized, four other police cars were called in and the interior of defendant's automobile was dismantled. A large sum of money was found in the automobile. Mr. Cartledge asserts that he was going to purchase an automobile.

The defendant further argues that *United States v. Guzman*, 864 F.2d 1512 (10th Cir.1988), is on all fours with the matter at bar. In *Guzman*, a New Mexico state trooper stopped the defendant because he did not appear to be wearing a seat belt. After the officer had all the information required to issue a citation, he interrogated Mr. Guzman at length. The officer asked the defendant whether he had any weapons or contraband. Mr. Guzman replied that he was free to look. The officer found $5,000 and cocaine in the vehicle. In judging the validity of a stop the *Guzman* court noted: "A pretextual stop occurs when the police use a legal justification to make a stop in order to search a person or place, or. to interrogate a person, for an unrelated serious crime for which they do not have a reasonable suspicion necessary to support a stop."

The Government contends that Trooper Combs had authority to stop the defendant and that therefore the search was valid. It alleges that the state officer had at least a reasonable suspicion to stop the automobile based on the violation of seat belt law observed by the officer. The Government attempted to rebut the allegation that the stop was pretextual by Trooper Combs' testimony that he stops drivers regularly for violations of the seat belt statute. Alternatively, the Government argues that the defendant consented to the search and that therefore the search was valid.

This court does not reach the merits of the parties' argument because the North Carolina statute, which was the predicate for the stop, expressly prohibits the introduction of evidence of the failure to wear a seat belt in a criminal or civil proceeding unless the person is being tried for the traffic infraction itself. As the Government cannot meet its burden without the consideration of such evidence, the court must grant defendant's motion to suppress.

Generally speaking, "the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." *United States v. Matlock*, 415 U.S. 164, 172–73, 94 S.Ct. 988, 994, 39 L.Ed.2d 242 (1973). *See also* Wright, Federal Practice and Procedure: Criminal 2d § 675. However, the United States Supreme Court held that the reception of evidence at suppression motions is

limited by Rule 104(a) of the Federal Rules of Evidence. The court noted: "Rule 104(a) provides that preliminary questions concerning admissibility are matters for the judge and that in performing this function he is not bound by the Rules of Evidence except those with respect to privileges." *United States v. Matlock*, 415 U.S. at 174, 94 S.Ct. at 995.

In the instant case, this court is faced with a North Carolina statute which would bar the Government's evidence concerning probable causes. The Government contends that the court must ignore the state rules and consider the facts and circumstances which are relevant for a determination of probable cause.

North Carolina's Mandatory Seat Belt law, Article 3 of the Motor Vehicle Act, N.C.Gen.Stat. § 20–135.2A (1985) provides:

> (a) Each front seat occupant who is 16 years of age or older and each driver of a passenger motor vehicle manufactured with seat safety belts in compliance with Federal Motor Vehicle Safety Standard No. 208 shall have such a safety belt properly fastened about his body at all times when the vehicle is in forward motion on a street or highway in this State....

> \* \* \* \* \* \*

> (d) Evidence of failure to wear a seat belt shall not be admissible in any criminal or civil trial, action, or proceeding except in an action based on a violation of this section.

It is apparent from the language of the statute that North Carolina created an evidentiary privilege for violators of this statute such that evidence of their failure to wear a seat belt could not be used for any purpose except prosecution under the statute. The exclusion of evidence of failure to wear a seat belt has been upheld in civil cases. *See Hagwood v. Odom*, 88 N.C. App. 513, 364 S.E.2d 190 (1988). This court believes that the state trooper is bound by the state statute even though the suit is brought in federal court. Furthermore, under Rule 104(a) and Rule 501 of the Federal Rules of Evidence, this court is bound by North Carolina laws regarding privileges.

The language of the statute is unequivocal in barring the introduction of evidence of violation for any purpose other than for proving a violation of the statute itself. In the case before the court, the citation was dismissed. This court does not believe that it is proper to review such evidence in light of statute and the mandate of the Supreme Court with respect to privileges.

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that defendant's motion to suppress the evidence is GRANTED.