STATE v. WILLIAMS

[113 N.C. App. 686 (1994)]

---

STATE OF NORTH CAROLINA v. MARY ANN BARNES WILLIAMS

No. 9310SC59

(Filed 1 March 1994)

**Automobiles and Other Vehicles §§ 776, 834 (NCI4th)— seat belt violation — inadmissibility of evidence — driving while impaired charge properly dismissed**

Evidence of a motorist's violation of the seat belt law may not be used as justification for the highway stop of his vehicle in the event the officer discovers the existence of criminal activity in the course of the stop; therefore, the trial court correctly construed the provisions of N.C.G.S. § 20-135.2A(d)

STATE v. WILLIAMS

[113 N.C. App. 686 (1994)]

so as to require the dismissal of a driving while impaired charge against defendant who was initially stopped for a seat belt violation.

**Am Jur 2d, Automobiles and Highway Traffic §§ 357-367, 392.**

Judge MARTIN concurring.

Judge LEWIS dissenting.

Appeal by the State from judgment entered 18 March 1992 by Judge Gregory A. Weeks in Wake County Superior Court. Heard in the Court of Appeals 5 October 1993.

On 18 January 1991 at approximately 1:00 a.m., defendant was stopped by Trooper A.W. Johnson of the North Carolina State Highway Patrol on New Hope Church Road in Wake County for failing to wear her seat belt. Defendant was charged with driving while impaired and failing to wear her seat belt.

Both of the cases came on for trial on 27 January 1992. Upon motion of defendant, District Court Judge James R. Fullwood severed the offenses. Defendant then pled responsible to the seat belt infraction. At the same time, the trial court heard defendant's pre-trial motion to suppress all of the evidence relating to the offense of driving while impaired. The State stipulated that the only basis for the stop of defendant's vehicle was that she was not wearing her seat belt. The court then ruled that the evidence of defendant's failure to wear her seat belt was not admissible in the DWI trial, and dismissed the charge of DWI for lack of evidence.

The State appealed the dismissal of the DWI as well as the district court's order severing the two hearings to the superior court. On 18 March 1992, the superior court affirmed the orders of the district court. The State appeals.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III, for the State.*

*DeMent, Askew, Gammon & Mueller, by Richard T. Gammon, for defendant-appellee.*

STATE v. WILLIAMS

[113 N.C. App. 686 (1994)]

WELLS, Judge.

## I. Motion To Suppress

In ruling upon defendant's motion to suppress, the district court entered the following order:

CONCLUSIONS OF LAW

1. The evidence of the failure of the Defendant to use her seat belt is not admissible in any other criminal or civil action except one based on a violation of this section pursuant to North Carolina General Statute Section 20-135.2A(d).

2. That failure to sever the two offenses would result in an unfair determination of the Defendant's guilt or innocence pursuant to North Carolina General Statute Section 15A-927(b)(1).

THEREFORE, based upon the foregoing, the Court ORDERS, ADJUDGES AND DECREES that the offenses of Driving While Impaired and Failure to Use Seat Belt shall be severed in order to promote a fair determination of the Defendant's guilt or innocence of each offense.

On 18 March 1992, the superior court entered its order affirming the judgment of the district court.

In this case of apparent first impression before our appellate courts, we must determine whether the trial court correctly construed the provisions of G.S. § 20-135.2A(d) so as to require the dismissal of the driving while impaired charge against defendant. For the reasons which follow, we answer that question in the affirmative.

In 1985, the United States Department of Transportation promulgated a directive requiring that all American-made cars be equipped with automatic crash protection devices unless states accounting for at least two-thirds of the nation's population passed mandatory seat belt usage laws, *see* Comment, Seat Belt Law, 64 N.C. Law Rev. 1127 (1986). In response to that directive, our General Assembly enacted such a law (Seat Belt Use Mandatory), codified in G.S. § 20-135.2A. Subsection (d) of the statute provided:

(d) Failure to wear a seat safety belt in violation of this section shall not constitute negligence in any action for the recovery of damages arising out of the operation, ownership, or

maintenance of a motor vehicle, nor shall anything in this act change any existing law, rule or procedure pertaining to any such civil action.

This was an apparent codification of our Supreme Court's rejection of the so-called common law "seat belt defense" in *Miller v. Miller*, 273 N.C. 228, 160 S.E.2d 65 (1968).

The N.C.L.R. Comment we have cited above was sharply critical of the General Assembly for failing to use the enactment of our mandatory seat belt usage law to overturn *Miller* so as to allow the use of the "seat belt defense" as a factor in mitigation of damages (of injured motorists who failed to buckle-up). Nevertheless, when the General Assembly next considered the question, it enacted Chapter 623 of the 1987 Session Laws as follows:

AN ACT TO MAKE THE EVIDENCE OF THE USAGE OF SEAT BELTS INADMISSIBLE IN CRIMINAL OR CIVIL PROCEEDINGS

*The General Assembly of North Carolina enacts:*

**Section 1.** G.S. 20-135.2A(d) is rewritten to read:

'(d) Evidence of failure to wear a seat belt shall not be admissible in any criminal or civil trial, action, or proceeding except in an action based on a violation of this section.'

**Section 2.** This act is effective upon ratification.

In the General Assembly read three times and ratified this 16th day of July 1987.

Thus, not only did the General Assembly retain the exclusion of the seat belt defense in civil cases, but expanded the act so as to exclude evidence of the failure to have a fastened seat belt in place in other criminal proceedings.

In *United States v. Cartledge*, 742 F.Supp. 291 (M.D.N.C. 10 Aug. 1990), *reversed on other grounds*, 928 F.2d 93 (4th Cir. 1991), defendant was charged with possession of a firearm by a felon. His motion to suppress was based on the fact that the highway stop of his automobile was for a seat belt violation under North Carolina law. Judge Erwin, writing for the Court, interpreted G.S. § 20-135.2A(d) in this way: [It is] "apparent from the language of this section that North Carolina created an evidentiary privilege for violation of this statute such that evidence of failure to use

a seat belt could not be used for any purpose except prosecution under this statute." (Emphasis supplied.)

Our research has disclosed that during the 1993 Session of the General Assembly, three bills were introduced proposing amendments to G.S. § 20-135.2A(d).

Senate Bill 731 was as follows:

A BILL TO BE ENTITLED

AN ACT TO ALLOW EVIDENCE OF A LACK OF SEAT BELT USAGE TO BE ADMITTED IN A CRIMINAL OR CIVIL PROCEEDING.

The General Assembly of North Carolina enacts:

Section 1. G.S. 20-135.2A(d) reads as rewritten:

'(d) Evidence of failure to wear a seat belt shall not be admissible in any criminal or civil trial, action, or proceeding except in an action based on a violation of this section or as justification for the stop of a vehicle or detention of a vehicle operator and passengers.'

Section 2. This act is effective upon ratification and shall apply to any trial, action, or proceeding held on or after that date.

House Bill 697 was as follows:

A BILL TO BE ENTITLED

AN ACT TO MAKE THE FAILURE TO WEAR A SEAT BELT ADMISSIBLE IN CRIMINAL TRIALS.

The General Assembly of North Carolina enacts:

Section 1. G.S. 20-135.2A(d) reads as rewritten:

'(d) Evidence of failure to wear a seat belt shall not be admissible in any civil trial, action, or proceeding.'

Section 2. This act becomes effective December 1, 1993, and applies to violations cited and offenses occurring on or after that date.

House Bill 728 was as follows:

## A BILL TO BE ENTITLED

AN ACT TO MAKE THE WEARING OF SEAT BELTS ADMISSIBLE IN CRIMINAL PROCEEDINGS.

The General Assembly of North Carolina enacts:

Section 1. G.S. 20-135.2A(d) reads as rewritten:

'(d) <u>Evidence of failure to wear a seat belt shall not be admissible in any criminal or civil trial, action, or proceeding except in an action based on a violation of this section or as justification for the stop of a vehicle or detention of a vehicle operator and passengers.'</u>

Section 2. This act is effective upon ratification and shall apply to any trial, action, or proceeding held on or after that date.

None of the bills were enacted.

With this legislative background and history in mind, we are persuaded that the trial court's ruling in this case was the only one that could be made. The language of the statute is clear and unambiguous, and leaves us no basis for any construction other than that given by the trial court.

The State urgently contends that such a construction effects an absurd result, which the Legislature could not have intended. We cannot agree. We recognize the State's concern, it being obvious that not only may the offense of impaired driving go unprosecuted in some cases, but that evidence of other serious crimes might also be excluded where the initial stop of a motor vehicle was for a seat belt violation. A recent decision of this Court illustrates the problem. In *State v. Morocco*, 99 N.C. App. 421, 393 S.E.2d 545 (1990), the defendant driver, initially stopped for a seat belt violation, was found to be transporting a significant amount of cocaine. His motion to suppress that evidence, which did not raise or present the statutory exclusion, was denied, and this Court upheld the conviction.

Nevertheless, we must recognize in this case that the Legislature has written a clear rule which our courts cannot violate.

## II. Severance

The State also contends that the trial court erred in allowing defendant's motion to sever the trial of her seat belt infraction from her driving while impaired charge. For the reasons we have stated above, this ruling was obviously correct.

The judgment below is

Affirmed.

Judge LEWIS dissents in a separate opinion.

Judge MARTIN concurs in a separate opinion.

Judge MARTIN concurring.

I am reluctantly convinced to concur. The question is whether evidence of a motorist's violation of the "seat belt law" may be used as justification for the highway stop of his vehicle in the event the officer discovers the existence of criminal activity in the course of the stop. The issue has been squarely presented to the General Assembly, which, as Judge Wells points out, has thus far expressly declined to permit use of evidence of a violation of the "seat belt law" for any purpose other than prosecution for failure to use a seat belt. Although I agree with the Attorney General that G.S. § 20-135.2A(d), as currently written, may actually frustrate and undermine legitimate law enforcement efforts, and, as applied in the present case, produce an arguably absurd result, where the terms of the statute are clear, it is our duty to apply it as written, irrespective of any opinion we may have as to its wisdom. *Peele v. Finch*, 284 N.C. 375, 200 S.E.2d 635 (1973). I share Judge Lewis' optimism that the General Assembly will soon reexamine the issue and permit evidence of a violation of G.S. § 20-135.2A to be admitted for the purpose of showing that a law enforcement officer had justification to stop a vehicle.

Judge LEWIS dissenting.

I respectfully dissent.

I am not unmindful of the majority's assertion that the legislative history of N.C.G.S. 20-135.2A infers a clear intent to create a very peculiar infraction relative to not "buckling up." "An infraction

STATE v. WILLIAMS

[113 N.C. App. 686 (1994)]

is an unlawful act that is not a crime." N.C.G.S. § 20-135.2A(e) (1993). No court costs may be assessed and, indeed, nothing but a fine may be imposed. The majority reads the language of the statute to require exclusion of evidence of an infraction so as to prohibit a hearing on any connected misdemeanor or felony, as occurred in this case. This would create the unacceptable result of having a legislatively-created prohibition against prosecution of a possible felony or misdemeanor.

Since the beginning, North Carolina courts have recognized the superiority of the Constitution over conflicting legislation. In *Bayard v. Singleton*, 1 N.C. 5 (1787), the Court discussed a statute decreeing that upon presentation of a deed from a superintendent commissioner of confiscated estates, a judge must dismiss any action brought for the recovery of that real property. This statute was passed in the aftermath of the Revolution, by which time the State had confiscated the property of those loyal to the crown and then sold the property or at least deeded it to other persons. The plaintiff brought an action to recover such property and the defendant moved to dismiss according to the statute, which required the courts, in all cases where the defendant made an affidavit that he held the disputed property under a sale from a commissioner of forfeited estates, to dismiss the suit or motion. The Constitution at that time provided that all citizens had a right to a trial by jury regarding real property rights. The Court, in decreeing that such a statute could not stand, made the following observation:

> That by the Constitution every citizen had undoubtedly a right to a decision of his property by a trial by jury. For that if the Legislature could take away this right, and require him to stand condemned in his property without a trial, it might with as much authority require his life to be taken away without a trial by jury, and that he should stand condemned to die, without the formality of any trial at all: that if the members of the General Assembly could do this, they might with equal authority, not only render themselves the Legislators of the State for life, without any further election of the people, from thence transmit the dignity and authority of legislation down to their heirs male forever.

*Id.* at 7.

In 1215 a reluctant King John made a promise to his rebellious barons: "To no one will we sell, to no one will we deny or delay right or justice." J. Orth, *The North Carolina State Constitution: A Reference Guide* 54 (1993). This provision of the *Magna Carta* was incorporated into section 18 of the North Carolina Constitution in very similar language: "All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay." N.C. Const. art. I, § 18. "[E]very person for an injury done him in his lands, goods, person . . ." indicates to me a clear intent by the framers of our Constitution to see that victims in the criminal law would have open access to remedy by due course of law with right and justice administered without denial. The necessity of having disputes settled in court rather than in the streets is a most basic tenet of our cherished rule by law. Put in context with the seat belt infraction at issue in the case at hand, exclusion of evidence, which would send the defendant in this case home free of the charge of driving under the influence, while leaving unresolved the question as to whether or not such a misdemeanor had been committed, would clearly lead to the conclusion that, had the other violation been murder, rape or kidnapping instead of driving under the influence, then justice would have been most assuredly denied and the victims of such a crime would not have had remedy by due course of law.

I do not know nor does the record reflect why the legislature created such a loophole or why they failed to plug it in succeeding sessions. However, I am so convinced that the legislature will recognize and correct this very dangerous oversight that I believe this dissent will soon become relevant only as to this particular case.

A well-established rule is that a statute will be interpreted to avoid absurd and bizarre consequences. *Schofield v. Great Atl. & Pac. Tea Co.*, 299 N.C. 582, 264 S.E.2d 56 (1980). Similarly, our courts will not adopt an interpretation that results in palpable injustice where the statute is susceptible to another interpretation which is consistent with the intention of the statute, because there is a presumption that the legislature acted with reason and common sense and did not intend untoward results. *State ex rel. Comm'r of Ins. v. North Carolina Auto. Rate Admin. Office*, 294 N.C. 60, 241 S.E.2d 324 (1978). When the literal interpretation of a statute contravenes the manifest purpose of the statute, the reason and

purpose of the law will be given effect and the strict letter of the statute will be disregarded. *North Carolina Baptist Hosps., Inc. v. Mitchell*, 323 N.C. 528, 533, 374 S.E.2d 844, 847 (1988).

My research reveals that this is a case of first impression in this State. However, at least two federal courts have had an opportunity to construe the provisions of section 20-135.2A(d). In *United States v. Cartledge*, 928 F.2d 93 (4th Cir. 1991), the Fourth Circuit held that section 20-135.2A(d) could not be used as a shield by the defendant so as to defeat the interests of the federal government in enforcing its criminal statutes. Furthermore, the Seventh Circuit, per Judge Posner, applying North Carolina law in a conflict of laws case, said in dicta that a literal interpretation of section 20-135.2A(d) would be incorrect. *Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 198 (7th Cir.), *cert. denied*, --- U.S. ---, 121 L. Ed. 2d 541 (1992). As an example, the Seventh Circuit reasoned that if an irate motorist ripped off his seat belt and strangled the driver, a literal interpretation of the statute would preclude the prosecution from introducing the seat belt as the murder weapon because to do so would show that the defendant was not wearing his seat belt, an obviously absurd result. In support of its conclusion that a literal interpretation of section 20-135.2A(d) would be incorrect, the Seventh Circuit relied on *State v. Brewer*, 328 N.C. 515, 402 S.E.2d 380 (1991), where the Supreme Court, in a murder prosecution of a woman who abandoned her car containing her disabled child on the railroad tracks, allowed the introduction of evidence that the child knew how to release her seat belt.

The fact that two federal courts have declined to apply a literal interpretation of section 20-135.2A(d) is at least some evidence that this statute is not as unambiguous as defendant would have us believe. I consider also this Court's prior decision in *State v. Morocco*, 99 N.C. App. 421, 393 S.E.2d 545 (1990). In *Morocco*, a State trooper stopped the defendant for a seat belt violation. After engaging defendant in conversation, the officer became suspicious and asked permission to search the defendant's car and permission was granted. During his search the trooper found cocaine and arrested defendant for trafficking. Although the specific issue presented by this case was not at issue in *Morocco*, this Court held that in deciding whether a traffic stop was pretextual it would look to what a reasonable officer would do, rather than what the officer could have done. *Id.* at 427, 393 S.E.2d at 548. Concluding that the trooper's stop was not pretextual, the Court

then examined the voluntariness of defendant's consent and did not even consider whether the evidence of the seat belt violation was admissible to establish the trooper's probable cause for stopping defendant in the first place. Had defendant's argument been applied in *Morocco* then this Court would have been required to dismiss the cocaine charge and convict the defendant only on the seat belt offense. This would clearly be an absurd result.

It is the public policy of this State to enforce the seat belt law. However, it is also the public policy of this State to seize illegal drugs, to prevent murders and kidnappings, and to get drunk drivers off the road. If defendant's construction of section 20-135.2A(d) is carried to its logical conclusion, then a police officer who observes an individual violating the seat belt law and pulls him over, discovering then that the driver is intoxicated and has a bloody corpse in the back seat, could not use evidence of the seat belt violation as probable cause to stop the automobile, rendering both investigation and prosecution for murder impossible.

I find that a literal interpretation of section 20-135.2A(d) reaches an absurd result which the legislature could not have intended. I look to the spirit of the statute, which was to encourage people to wear their seat belts, and to the history of the statute which shows that section 20-135.2A(d) was originally designed only to reject the "seat belt defense." Defendant's interpretation distorts both the spirit and the history of this statute and could even encourage drunken motorists to drive without a seat belt in the hope that if caught they may escape through this legislatively-created loophole. Surely, this is not what the General Assembly intended. I do not believe they intended for section 20-135.2A(d) to be read so broadly as to preclude evidence of additional criminal activity when the seat belt violation is only a step in the evidentiary chain which establishes the officer's probable cause to make further arrests.

The trial judge in *Bayard v. Singleton* refused to suspend the right of jury trial in the face of bad legislation, and certainly would have allowed the evidence of the stop in this case in an effort not to deny or delay "right and justice."

As to the State's objection to defendant's motion to sever, I find that this is an issue directed to the discretion of the trial court. *State v. Carson*, 320 N.C. 328, 357 S.E.2d 662 (1987).

I would reverse as to dismissing the charge of driving while impaired and remand the issue for trial.