STATE OF NORTH CAROLINA
v.
DANIEL JAIMES TRUJILLO, Defendant.
No. COA06-2
Court of Appeals of North Carolina.
Filed February 6, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General William B. Crumpler, for the State.
Stubbs, Cole, Breedlove, Prentis & Biggs, PLLC, by C. Scott Holmes, for defendant-appellant.
GEER, Judge.
On appeal, defendant Daniel Jaimes Trujillo challenges the denial of his motion to suppress evidence discovered during a roadside search of his vehicle. Because we find that the search and seizure at issue was within constitutional bounds, we affirm the trial court's denial of the motion to suppress.
Defendant was indicted for trafficking in cocaine by possession, trafficking in cocaine by transportation, and possession of cocaine with the intent to manufacture, sell or deliver.[1] Following his indictment on these charges, defendant filed a pre-trial motion to suppress the evidence seized during the search of his vehicle. The trial court held an evidentiary hearing on the motion at which Officers Jeff Dorsett and Randy Binns of the Montgomery County Sheriff's Department testified. Defendant offered no evidence. In a written order filed 26 July 2005, Judge Ripley E. Rand denied the motion.
"The scope of review on appeal of the denial of a defendant's motion to suppress is strictly limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and in turn, whether those findings support the trial court's conclusions of law." State v. Corpening, 109 N.C. App. 586, 587-88, 427 S.E.2d 892, 893 (1993). Because defendant has not assigned error to any of the trial court's findings of fact, those findings are conclusive and binding on appeal. State v. Jacobs, 162 N.C. App. 251, 254, 590 S.E.2d 437, 440 (2004). Nonetheless, "the trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found." State v. Fernandez, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997).
Based on the evidence presented at the suppression hearing, the trial court made the following findings of fact. On 15 May 2004, Officers Dorsett and Binns, both narcotics detectives, were engaged in criminal interdiction and traffic surveillance near Biscoe, North Carolina. The officers were positioned along the highway in separate cars and were in radio contact with each other. Officer Binns was running radar on passing vehicles. If he noticed activity warranting a stop, he would radio ahead to Officer Dorsett, who would then stop the vehicle.
Officer Binns noticed a truck with dark windows that was traveling less than 55 miles per hour in a 65 mile per hour zone. Officer Dorsett also took note of the truck's darkly tinted windows. Based on the possibility of a window tint violation, Officer Dorsett decided to stop the truck, approached it, and asked defendant, the truck's sole occupant, for his license. Defendant presented his Mexican driver's license and indicated that he had been in the United States for only a short time. Officer Dorsett initially spoke to defendant in Spanish until learning that defendant spoke some English. The officer and defendant then communicated in English.
Officer Dorsett checked the window tint, found the percentage of light transmission to be 35 percent, and thereby determined the tinting to be in compliance with North Carolina law.[2] Since no window tint violation was detected, Officer Dorsett returned defendant's driver's license and advised him to obtain a North Carolina license. Officer Dorsett then initiated what the trial court found to be a "casual" conversation with defendant about illegal drug activity. He inquired whether defendant knew anybody involved with cocaine. Defendant, in turn, responded that drugs were "a lot of trouble." Officer Dorsett then asked defendant whether he had any drugs, and defendant responded, "No. Do you want to check?" The officer said, "Sure  if you don't have any objections." Defendant responded, "Go ahead." Officer Dorsett also presented defendant with a consent to search form written in both English and Spanish that defendant signed.
With defendant standing alongside Officer Binns, Officer Dorsett then began to search the truck. In the center console area of the truck, Officer Dorsett discovered four taped packages containing a substance resembling cocaine. A field test was performed on the substance, which was positive for cocaine. Defendant apologized to Officer Dorsett for lying about the presence of drugs in the truck.
Based on these findings, the trial court concluded that the officers had reasonable suspicion to stop defendant for a suspected violation of North Carolina's window tint law; that defendant gave consent to the search of his truck for drugs; and that none of the officers' actions had violated defendant's statutory or constitutional rights. The trial court accordingly denied the motion to suppress.
After defendant's motion to suppress was denied, defendant pled guilty to one trafficking charge, while reserving his right to appeal the denial of his motion to suppress. He also pled guilty to the charges of assault on a law enforcement officer and misdemeanor escape from a local jail. The trial court sentenced defendant to a term of 175 to 219 months imprisonment. Defendant gave timely notice of appeal.

Discussion
Although defendant argues that the trial court erred in denying his motion to suppress, defendant does not challenge the initial stop of his truck. Instead, he contends that, following the initial stop, he was unreasonably detained, in violation of the Fourth Amendment, when the officer continued to question him even though the reason for the initial stop had been resolved. This Court has recognized that "[o]nce the original purpose of the stop has been addressed, there must be grounds which provide a reasonable and articulable suspicion in order to justify further delay." State v. Falana, 129 N.C. App. 813, 816, 501 S.E.2d 358, 360 (1998) (citing Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Under the facts of this case, however, we conclude that defendant was no longer seized for purposes of the Fourth Amendment following the return of his driver's license.
This Court held in State v. Kincaid, 147 N.C. App. 94, 99-100, 555 S.E.2d 294, 298-99 (2001), that an initial seizure is terminated when the detaining officer returns the individual's personal documentation, unless a reasonable person under the circumstances would not feel free to leave or otherwise put an end to the encounter. Furthermore, after the officer has returned the individual's documentation, subsequent questioning and even requests for consent to search will not rise to the level of a constitutional seizure, "'so long as a reasonable person would understand that he or she could refuse to cooperate.'" Id. at 100, 555 S.E.2d at 299 (quoting State v. Brooks, 337 N.C. 132, 142, 446 S.E.2d 579, 586 (1994)). If the totality of the circumstances reflects a consensual encounter, rather than a seizure, there is no violation of the Fourth Amendment. Id.
In this case, the totality of the unchallenged facts found by the trial court shows that the initial traffic stop was terminated upon the officer's return of defendant's documentation and that the conversation that followed was consensual. Notably, there are no findings (or evidence) that would indicate any show of force or coercion by the officers. To the contrary, the conversation was, according to the trial court, "casual." Most telling is the fact that defendant himself invited Officer Dorsett to search his vehicle without any prior request by Officer Dorsett. Officer Dorsett then gave defendant an opportunity to retract this invitation when he indicated he would search the truck only if defendant had no objections. Defendant responded simply by saying, "Go ahead." Given these circumstances, it is evident that a reasonable person in defendant's position would not have felt compelled to cooperate and that this had become a consensual encounter. See State v. Morocco, 99 N.C. App. 421, 428-29, 393 S.E.2d 545, 549 (1990) (where defendant's documents had been returned, and defendant then gave consent to search of his car, defendant "was not illegally seized").
Defendant relies heavily on Falana to support his contention that the additional questioning constituted an illegal seizure. In Falana, this Court held that the continued detention of a motorist was illegal under circumstances very different from those in this case. The Falana defendant was detained in the officer's patrol car following a traffic stop. After the defendant had twice refused to grant consent for a search of his vehicle, the officer decided to use a trained drug-sniffing dog to conduct a sweep of the vehicle. In contrast to Falana, the circumstances here do not show any police behavior that would overbear a reasonable person's ability to terminate the encounter. Rather, all the findings point to the conclusion that defendant freely cooperated with the officers. Accordingly, we hold that, after the officers resolved the window tint issue and returned defendant's documentation, defendant was not seized within the meaning of the Fourth Amendment.[3]
Defendant further argues that, even assuming the validity of his consent to the search, the search was unconstitutional because it exceeded the reasonable scope of the consent provided. "'When the State relies upon consent as a basis for a warrantless search, the police have no more authority than they have been given by the consent.'" Morocco, 99 N.C. App. at 430, 393 S.E.2d at 550 (quoting State v. Jolley, 68 N.C. App. 33, 38, 314 S.E.2d 134, 137, rev'd on other grounds, 312 N.C. 296, 321 S.E.2d 883 (1984), cert. denied, 470 U.S. 1051, 84 L. Ed. 2d 816, 105 S. Ct. 1751 (1985)). In Morocco, we further observed that "[t]he defendant's consent to search the automobile for contraband entitled [the officer] to conduct a reasonable search anywhere inside the automobile which reasonably might contain contraband . . . ." Id.
Here, defendant consented to a search of his truck. According to the findings of the trial court, the officer located the cocaine in "the center console" of the truck. Since it is reasonable to assume that drugs could be stored in a truck's center console, the officer was entitled to search there. See State v. Aubin, 100 N.C. App. 628, 634, 397 S.E.2d 653, 656 (1990) (scope of search for contraband not exceeded because "[i]t was reasonable for [officer] to lift up the corner of the back seat in the progress of his search"), appeal dismissed and disc. review denied, 328 N.C. 334, 402 S.E.2d 433, cert. denied, 502 U.S. 842, 116 L. Ed. 2d 101, 112 S. Ct. 134 (1991). In his brief, defendant suggests that the officer needed to dismantle the truck seat to uncover the cache of cocaine. The unchallenged findings of the trial court, however, do not support defendant's suggestion. Moreover, we find no support for this contention in the transcript from the suppression hearing either. We, therefore, hold that the officer's search did not unreasonably exceed the scope of defendant's consent. Defendant next asserts that the search of his vehicle was unconstitutional because it was carried out pursuant to "a traffic highway drug interdiction program that uses reasonable suspicion as a pretext to stop motorists and then continues the detention beyond the purpose of the stop in order to investigate general controlled substance crimes." Defendant attempts to analogize the circumstances of his arrest to City of Indianapolis v. Edmond, 531 U.S. 32, 148 L. Ed. 2d 333, 121 S. Ct. 447 (2000), in which the United States Supreme Court held unconstitutional a highway checkpoint program whose principal purpose was general crime control.
This contention was never presented to the trial court. Accordingly, it has not been preserved for appellate review, and we therefore do not address its merits. N.C.R. App. P. 10(b)(1); State v. Smith, ___ N.C. App. ___, ___, 631 S.E.2d 34, 38 (2006) (where party "impermissibly presents a different theory on appeal than argued at trial, th[e] assignment of error was not properly preserved for appellate review").
Finally, we address defendant's argument that the trial court failed to make adequate findings of fact. Defendant contends that there were no findings of fact that would support a determination whether there was reasonable suspicion to justify the extended questioning or whether this questioning was merely a consensual encounter. This issue has already been resolved by our holding that, based on the trial court's findings of fact, defendant was not seized following the return of his documentation. Defendant also argues that the trial court made insufficient findings to support a determination that defendant's consent was voluntarily given. "When the State relies on a purported consent to justify a warrantless search, it has the burden of proving that the consent was voluntary and not the result of express or implied coercion. Voluntariness is a question of fact to be determined from all the surrounding circumstances." Aubin, 100 N.C. App. at 633, 397 S.E.2d at 656 (internal citation omitted).
While defendant refers the Court's attention to the lack of explicit findings regarding his familiarity with English and the officer's failure to inform him of his right to refuse consent, defendant does not cite any authority, and we know of none, that would require a trial court to exhaustively catalogue the entire universe of "surrounding circumstances" when the evidence is uncontroverted, as it was here. As we stated in State v. Ghaffar, 93 N.C. App. 281, 288, 377 S.E.2d 818, 822 (1989), a case must be remanded for additional findings "[w]hen the trial court fails to make sufficient factual findings to resolve the issues presented."
Here, the court's findings were sufficient to resolve the issue whether defendant's consent was voluntary. The findings specifically show that defendant not only "sp[o]ke a little English," but also that he participated in a "casual conversation" in English with Officer Dorsett. The officer did not need to request consent to search because defendant, on his own initiative asked, "Do you want to check?" Even when the officer offered him an opportunity to object, defendant said, in English, "Go ahead." Defendant also signed a consent to search form prepared in both English and Spanish. These findings are sufficient to establish that defendant's consent was voluntary. Indeed, nothing in the record suggests otherwise. See Aubin, 100 N.C. App. at 633-34, 397 S.E.2d at 656 (conclusion of voluntary consent was proper where "defendant responded three separate times with no apparent reservations" that officer could search car, record did not indicate that defendant "was subjected to any pressure from [officer]," and "defendant displayed an educated and understanding use of the English language").
With respect to defendant's argument that the trial court erred in not making findings of fact or conclusions of law as to the scope of defendant's consent, we believe the order adequately addresses defendant's argument to the trial court that the search unlawfully extended to the closed center console. The order reflects that the officer secured valid consent to search for drugs and that drugs were found in the center console, a location reasonably encompassed within the scope of the consent provided.
Affirmed.
Judges CALABRIA and JACKSON concur.
Report per Rule 30(e).
NOTES
[1] The judgment also indicates that defendant was convicted of assault on a law enforcement officer and misdemeanor escape from a local jail. There are no indictments in the record relating to those charges.
[2] At the suppression hearing, Officer Dorsett testified that the percentage of light transmission through a tinted window must be at least 32 percent for the tinting to be lawful.
[3] Defendant also argues on appeal that any consent he gave to the search of his vehicle was tainted by the unlawful, extended detention. Because we have concluded that the additional conversation did not amount to an unlawful detention, we do not address defendant's "taint" argument.