**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Larry Reginald CARTLEDGE, Defendant–Appellee.**

No. 90–5672.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1991.

Decided March 1, 1991.

---

**94**

Lisa Blue Boggs, Asst. U.S. Atty., argued, Greensboro, N.C., for plaintiff-appellant.

Edward A. Fiorella, Jr., Charlotte, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., Greensboro, N.C., on brief), for defendant-appellee.

Before SPROUSE and WILKINS, Circuit Judges, and ELLIS, District Judge for the Eastern District of Virginia, sitting by designation.

SPROUSE, Circuit Judge:

Larry Cartledge was indicted for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a). A North Carolina highway patrolman had stopped Cartledge's car for a seat belt violation and, after a consensual search, found the involved weapon—a handgun. On Cartledge's motion and after a hearing, the district court ordered that the evidence of the seat belt violation be suppressed, holding that a North Carolina statute prohibited the introduction of evidence of failure to wear a seat belt in collateral proceedings, thus constituting a privilege under Fed.R.Evid. 501, 742 F.Supp. 291. We reverse, but remand for a hearing on a separate issue.

## I

On October 11, 1989, North Carolina Highway Patrolman A.C. Combs was assigned to the Interstate Task Force on Interstate 85 in Charlotte, North Carolina. Combs was operating a stationary radar check while parked in the median facing south. On that same day, the defendant, Larry Cartledge, was driving a 1984 Chevrolet Corvette north on Interstate 85. Cartledge's car was equipped with dark tinted windows.

At approximately 12:05 p.m., Cartledge passed Combs. Combs testified that Cartledge was not speeding, but that his suspicion was aroused by the tinted windows in the car because Combs "couldn't tell if [the driver] had his seat belt on or not." Combs testified that he could not see in the Corvette window when it passed his police cruiser. Combs, however, pursued the Corvette and, after determining that the driver was not wearing a seat belt, directed the car to stop.

After providing his South Carolina driver's license and car registration, Cartledge was asked to accompany Combs to the police car where he was issued a citation for driving without a seat belt in violation of N.C.Gen.Stat. § 20–135.2A(a).[1] After ex-

---

1. N.C.Gen.Stat. § 20–135.2A(a) states:
   (a) Each front seat occupant who is 16 years of age or older and each driver of a passenger motor vehicle with seat safety belts ... shall have such a safety belt properly fastened about his body at all times when the

plaining the payment procedures for the citation, Combs asked Cartledge whether he had any alcohol or firearms in the car. Cartledge replied that he had a gun in the console and Combs asked if he could look in the car. Cartledge agreed and subsequently signed a consent-to-search form.[2] In addition, Cartledge and his passenger were subjected to pat down searches by Combs.[3] During the pat down searches, $3,227 in currency was found in Cartledge's front pockets and a pocket knife was discovered in the passenger's possession.

During Combs' search of the vehicle, he found a loaded .380 handgun in the console and $21,625 in currency in a grocery bag underneath the speaker in the back seat. Cartledge stated that he was in possession of the money because he was en route to buy a truck from a dealer in Salisbury, North Carolina. Additional police officers were called to the scene and they brought with them a drug detection dog. The dog "hit" on the bag of money which was then seized. An extensive search of the vehicle failed to disclose any drugs or other contraband.

Cartledge was then charged under North Carolina law with carrying a concealed weapon. Both the seat belt and state weapons charges were later dismissed. The defendant was subsequently indicted in federal court for possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a).

## II

Although failure to wear a seat belt is a traffic violation under N.C.Gen.Stat. § 20–135.2A(a), § 20–135.2A(d) prohibits using evidence of the seat belt violation other than in proceedings to enforce the traffic violation. The section states that: "[e]vidence of failure to wear a seat belt shall not be admissible in any criminal or civil trial, action, or proceeding except in an action based on violation of this section." *Id.*

In Cartledge's initial suppression motion to the district court, he argued that there had been no probable cause for Combs to stop his automobile, but that the stop had been made for pretextual reasons. He argued then, as now, that due to the tinted glass, Combs could not have seen whether he was wearing a seat belt—insisting that he indeed was wearing a seat belt. The district court's initial order granted Cartledge's motion to suppress on the grounds that the highway stop of his Corvette was pretextual and because the use of the evidence was prohibited by the North Carolina General Statute.

However, the district court later issued findings of fact and conclusions of law, which stated:

> This court does not reach the merits of the parties' [pretext] argument because the North Carolina statute, which was the predicate for the stop, expressly prohibits the introduction of evidence of the failure to wear a seat belt in a criminal or civil proceeding unless the person is being tried for the traffic infraction itself. As the Government cannot meet its burden without the consideration of such evidence, the court must grant defendant's motion to suppress.

On appeal, the government contends that a federal court is not necessarily bound by a state rule of law creating an evidentiary privilege. Rather, the federal court must in each instance balance the consideration underlying the state legislative privilege

---

vehicle is in forward motion on a street or highway in this State.

**2.** There is some disagreement as to when the consent-to-search form was actually signed. Combs states that the form was signed prior to any examination of Cartledge's automobile. Cartledge, however, contends that he signed the consent form only after the vehicle had been searched by Combs, vice officers and drug dogs brought to the scene, and a further destructive search of the vehicle was made.

**3.** There is also disagreement as to when Cartledge and his passenger were subjected to pat down searches. Combs states that the pat down searches were administered only following the execution of the consent-to-search forms. Cartledge contends that the pat down searches were administered immediately after his admission that he had a gun in the console.

against the need to enforce the federal criminal statute, and that here the federal purpose predominates. We agree.

### III

■ The Federal Rules of Evidence provide, in pertinent part:

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

Fed.R.Evid. 104(a). The Rules further provide:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed.R.Evid. 501.

It is not entirely clear that the North Carolina legislature created an evidentiary privilege as contemplated by Fed.R.Evid. 501. We do not resolve that question, however, because we are persuaded that even if a privilege exists, the decision whether to suppress the evidence of the seat belt violation is controlled by the principle announced in *United States v. Gillock*, 445 U.S. 360, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980). *See also United States v. Chiarella*, 588 F.2d 1358, 1372 (2d Cir.1978) (evi-

dentiary privilege under New York labor law does not provide privilege under Fed.R. Evid. 501).

In *Gillock*, the Court was asked, *inter alia*, to determine the applicability of a state-created privilege for state legislative speech and debate under Fed.R.Evid. 501. The Court first determined that federal privilege law controls, stating:

[T]he House Conference Committee Report on the Federal Rules of Evidence leaves little doubt that Rule 501 requires the application of federal privilege law in criminal cases brought in federal court.... Thus, the fact that there is an evidentiary privilege under the Tennessee Constitution, Art II, § 13, which [the defendant] could assert in a criminal prosecution in state court does not compel an analogous privilege in a federal prosecution.

*Gillock*, 445 U.S. at 368, 100 S.Ct. at 1191 (citations and footnotes omitted).[4] The Court then balanced the competing federal and state interests:

[A]lthough principles of comity command careful consideration, our cases disclose that where important federal interests are at stake, as in the enforcement of federal criminal statutes, comity yields.... [W]e believe that recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal Government in enforcing its criminal statutes with only speculative benefit to the state legislative process.

*Gillock*, 445 U.S. at 373, 100 S.Ct. at 1194 (footnote omitted). The Court thus employed a balancing test which weighed the historical and policy considerations underlying the state legislative privilege and the concerns of comity between state and federal sovereignties against the need to enforce the federal criminal statutes.

In our view, a balancing of competing interests is likewise appropriate here. *See Memorial Hospital v. Shadur*, 664 F.2d

---

4. *See also United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir.1986) ("Rule 501 ... requires federal courts to apply federal common law to assertions of privilege in criminal cases.") (citing *Gillock, supra*).

1058, 1061 (7th Cir.1981); *In re Production of Records to Grand Jury,* 618 F.Supp. 440, 442 (D.Mass.1985). However, the district court in the case *sub judice* did not attempt such a balancing, rather holding that the North Carolina-created privilege is one that must be *automatically* recognized under Fed.R.Evid. 501. We disagree with the district court's conclusion on this discrete legal issue. We further conclude that a balancing of the competing federal and state interests would not support the district court's ultimate conclusion that the testimony concerning the seat belt violation must be suppressed as an evidentiary privilege under Rule 501. The federal interest involved is, as in *Gillock,* enforcement of the federal criminal statutes. In our view, this interest outweighs any state interest which might be implicated under this statute.

Even though we are persuaded that the district court's decision concerning the suppression of the seat belt evidence was based on an erroneous legal conclusion, we are not altogether convinced but that the suppression order still might be granted on grounds initially asserted by the court—that the police officer's stop of Cartledge's vehicle was pretextual and without probable cause. We are unable to determine on the present record, however, whether Combs' reasons for pursuing and stopping Cartledge's vehicle were legitimate or pretextual. On remand, the district court in its discretion may reconsider its suppression order and take evidence and make a finding on the factual issue of pretext.

The holding of the district court that Combs' testimony is barred by Rule 501 is hereby reversed, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

REVERSED AND REMANDED.