**Margaret Lynn HARTSELL, Plaintiff,**

**v.**

**DUPLEX PRODUCTS, INC., Rick Grebner, John Harris and Dennis Hardin, Defendants.**

**No. 3:93CV414–MU.**

United States District Court, W.D. North Carolina, Charlotte Division.

Aug. 10, 1995.

David L. Terry, Michael V. Matthews, Blakeney & Alexander, Charlotte, NC, for plaintiff.

Jim D. Cooley, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, Gordon E. Jackson, Jackson, Shields, Yeiser & Cantrell, Cordova, TN, for defendants.

## ORDER

MULLEN, District Judge.

This matter is before the court on Defendants' Motion to Strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Plaintiff alleges sexual harassment by Defendants in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (amended 1991). Plaintiff also alleges pendent state claims of intentional infliction of emotional distress and of negligent retention.

Plaintiff's Answer in Opposition to Motion and Memorandum of Law in Support of Defendant's Motion for Summary Judgment refers nine times to testimony from a March 1993 Employment Security Commission ("ESC") hearing. Defendants seek to excise this testimony from the record as absolutely privileged under N.C.Gen.Stat. § 96–4(t)(5) (1994) ("ESC Privilege").

■ The court may grant a motion to strike to eliminate from the pleadings any redundant, immaterial, impertinent or scandalous matter. Fed.R.Civ.P. 12(f). Rule 12(f) motions often are viewed unfavorably as dilatory tactics; therefore, the moving party must show that "the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of consideration ... and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (1990). *See also Moore v. Prudential Ins. Co. of Am.*, 166 F.Supp. 215, 216 (M.D.N.C.1958).

The Federal Rules of Evidence provide, in relevant part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the *privilege* of a witness ... *shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.* However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law.

Fed.R.Evid. 501 (1994) (emphasis added). Thus, courts considering the admissibility of ESC testimony must apply different standards to state claims and federal claims.

## PLAINTIFF'S STATE LAW CLAIMS

■ Rule 501 mandates that state law determines evidentiary privileges that apply to state claims litigated in federal court. *Doe v. Am. Nat'l Red Cross*, 788 F.Supp. 884, 888 (D.S.C.1992). North Carolina's legislature has crafted an evidentiary privilege for state ESC proceedings:

> All letters, reports, communication, or any other matters, either oral or written, *including any testimony at any hearing,* from the employer or employee to each other or to the Commission or to any of its agents, representatives, or employees, which letters, reports, or other communication shall have been written, sent, delivered, or made in connection with the requirements of the administration of this Chapter, *shall be absolutely privileged*

communication *in any civil or criminal proceedings....*

N.C.Gen.Stat. § 96–4(t)(5) (1994) (emphasis added).

Since plaintiff's claims for intentional infliction of emotional distress and for negligent retention find their rule of decision in state law, Rule 501 states unequivocally that the statutory privilege applies. Thus, plaintiff's use of ESC testimony to support her state law claims must be stricken as privileged testimony.

## PLAINTIFF'S TITLE VII CLAIM

State statutory privileges do not automatically apply to federal claims in federal court. *United States v. Wilson,* 960 F.2d 48, 50 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 275, 121 L.Ed.2d 202 (1992). At the threshold, a court must determine whether federal and state law conflict over the privilege at issue. *Stonehocker v. General Motors Corp.,* 587 F.2d 151, 154 (4th Cir. 1978). The Fourth Circuit Court of Appeals in *United States v. Cartledge,* 928 F.2d 93 (4th Cir.1991), held that federal courts must balance the interests underlying conflicting state and federal privilege law to determine which law controls the federal claim. *See also Memorial Hosp. v. Shadur,* 664 F.2d 1058, 1061 (7th Cir.1981). *But see, e.g., E.E.O.C. v. Ill. Dep't of Employment Sec.,* 995 F.2d 106 (7th Cir.1993). The Fourth Circuit incorporated the test of *United States v. Gillock,* 445 U.S. 360, 373, 100 S.Ct. 1185, 1193–1194, 63 L.Ed.2d 454 (1980), which requires federal courts to weigh the asserted federal interest against a state's policy reasons for crafting a legislative privilege and against reasons of comity.[1] *Cartledge,* 928 F.2d at 96.

Federal common law contains no privilege regarding state unemployment-benefits hearing transcripts. *E.E.O.C.,* 995 F.2d at 106. Since no Fourth Circuit cases address the incongruence between the North Carolina statutory privilege and the federal common law, the application of the privilege is ripe for the twofold *Cartledge* analysis.

The policy underlying North Carolina's privilege receives a statutory expression. The Employment Security Commission statute has decreed that "the public good and the general welfare of the citizens of [the] State" compel administrative oversight of unemployment reserves by the ESC. N.C.Gen.Stat. § 96–2. The Commission oversees North Carolina unemployment benefits, and it conducts hearings to determine employers' rights and liabilities arising under Employment Security law. The ESC Privilege encourages full disclosure from claimants and employers at ESC hearings, and it prevents parties from conducting free discovery before litigation.

The federal interest in Title VII claims obviously comprises fundamental questions of federal law. However, several factors in the instant case limit this interest substantially. First, the challenged testimony offers limited probative value to support this legitimate federal interest. Defendants correctly point out that Plaintiff's thorough depositions obviate the need for additional testimony when such testimony is used only for impeachment purposes. For example, page 29 of Plaintiff's memorandum uses Pam Myers' hearing testimony solely to highlight possible contradictions by Defendants ("Although Defendant Rick Grebner has testified that Myers agreed with him that Ms. Hartsell could not return to work, the testimony of Ms. Myers, elicited at the Employment Security Commission Hearing, is exactly to the contrary."). Furthermore, a review of each reference to testimony, on pages 26, 29, 45, 46, 51, 52, 66, 71 and 72 of Plaintiff's memorandum, reveals that Plaintiff seeks merely to contradict deposed testimony Plaintiff obtained through extensive discovery. The desire to impeach witnesses does not outweigh the state interest in protecting confidential unemployment proceedings. *See N.L.R.B. v. Adrian Belt Co.,* 578 F.2d 1304, 1310 (9th

---

1. The ruling effectively overrules *Walker v. Lewis,* 127 F.R.D. 466 (W.D.N.C.1989), which held that the court must apply federal privilege law when the issue is admissibility of evidence at trial relevant to a federal question and to a pendent state law claim. Moreover, plaintiff's reliance on cases in other circuits to assert a blanket application of federal privilege law is unavailing in light of *Cartledge,* which is binding authority for the court.

Cir.1978). Without more, these citations offer little utility to justify their admissibility in light of the policy reasons for excluding them.

Second, practical concerns caution against applying inapposite federal and state privilege standards in the same case. A jury, theoretically, could ignore challenged testimony in considering a state claim, while considering that same testimony in assessing a federal claim. However, such an unrealistic scheme makes little sense "because the moment privileged information is divulged, the point of having the privilege is largely lost." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 501[02]. Since the North Carolina statutory privilege effectively prevents this court from considering ESC testimony for Plaintiff's state law claim, *see supra*, the same testimony should not be imported for the federal claim. *See Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 458 (N.D.Cal.1978).

Finally, a Title VII claim heard in federal court commands a discrete adjudicative sphere from a state administrative proceeding. The North Carolina legislature has distinguished ESC hearings and civil trials as distinct proceedings by explicitly rejecting this testimony's admissibility in civil tribunals. ESC hearings do not investigate Title VII allegations, and ESC participants do not expect their testimony to appear later in a subsequent federal Title VII proceeding. Therefore, Plaintiff cannot overstep this demarcation by attempting to import testimony of limited probative value into federal court.

For these reasons, Plaintiff cannot use Employment Security Commission testimony to offer limited support to her Title VII claim, and statutory privilege bars using the same testimony for her state claim.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike from Plaintiff's Answer all references to testimony from a March 1993 Employment Security Commission hearing is hereby GRANTED.