510

**Eric JONES, et al.**

v.

**Susan MURPHY, et al.**

Civil No. CCB–05–1287.

United States District Court,
D. Maryland.

Nov. 26, 2008.

511

Memorandum Opinion

SUSAN K. GAUVEY, United States Magistrate Judge.

Dear Counsel:

This is a § 1983 civil rights action. Plaintiffs are male arrestees placed in the Booking Center who complain of unconstitutional strip searches and unconstitutional detention for 48 hours or more after arrest before presentment before a commissioner or other judicial officer. Defendants are the various wardens of the Booking Center, the Mayor and City Council and the Baltimore City Police Department.

Before the Court is defendants' motion for a protective order, seeking to prevent the disclosure of written advice prepared by the Office of the Maryland Attorney General ("OAG") to the Division of Pretrial Detention and Services ("Division"), regarding Baltimore Central Booking and Intake Center's ("BCBIC") arrestee search practices. (Paper No. 168.)

Specifically, defendants seek protection for three memoranda, prepared by the OAG for the Division within the past decade. (Paper No. 168–2, 2.) These memoranda consist of:

(i) a July 27, 2000 memorandum by Assistant Attorney General ("AAG") Glenn T. Marrow to then-Division Commissioner LaMont Flanagan re: "Blanket Strip Search Practice";

(ii) an October 16, 2002 memorandum by AAG Marrow to then-Division Commissioner LaMont Flanagan re: "strip searches," with a copy provided to AAG Stuart M. Nathan; and

(iii) a December 5, 2005 memorandum by AAG Karl A. Pothier to then-Division Commissioner William J. Smith "re: BCBIC's Search Policy Regarding Pre–Presentment Detainees," with copies provided to then-Deputy Commissioner Howard Ray, Deputy Commissioner Brown, Warden Franks, and AAGs Nathan and Judith A. Barr.

(Paper No. 168–2, 2.) The Court has reviewed the three memoranda *in camera*.

Defendants assert that these memoranda are confidential, inter-office communications that contain the opinions and recommendations of counsel regarding the scope of the Division's arrestee search practices; they seek protection for the documents under two theories: the attorney-client privilege and

executive privilege. The plaintiffs dispute the privileged status of the documents. For the reasons set forth below, the Court finds that neither privilege applies to these documents and they must be produced.

## Discussion

### The Attorney–Client Privilege

■ The purpose of the attorney-client privilege is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The privilege is "not favored by the federal courts" because it interferes with the truth seeking process and contravenes the right of citizens to evidence, and should be "strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir. 1984).

The traditional test for determining the applicability of the privilege was articulated by Judge Wyzanski in *United States v. United Shoe Machinery Corp.,* 89 F.Supp. 357 (D.Mass.1950):

■ The privilege applies only if:

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made (a) is a member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purposes of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed and (b) not waived by the client.

*Id.* at 358–59. *See also In re Allen,* 106 F.3d 582, 600 (4th Cir.1997) (applying the traditional test set out above).

Neither the plaintiffs nor the Court question the existence of an attorney-client relationship between the OAG (the two AAGs

who authored the subject memoranda, Messrs. Glenn Marrow and Karl Pothier) and the addressees LaMont Flanagan and William J. Smith, Commissioners of the Division. *See* Md.Code Ann., Corr. Servs. § 2–116 (West 2008). Thus, criteria (1) and (2) of *United Shoe* are easily satisfied. However, the fact of an attorney-client relationship does not, of course, make all communications *between* an attorney and his client privileged. Indeed, the law is quite to the contrary. The third criterion of *United Shoe* is that "the communication relates to a fact of which the attorney was informed (a) by his client, (b) without the presence of strangers, (c) for the purpose of securing primarily either (i) an opinion on law, or (ii) legal services, or (iii) assistance in some legal proceeding."

The Fourth Circuit in *United States v. (Under Seal),* 748 F.2d 871, 874 (4th Cir. 1984) establishes a very narrow view of this aspect of the attorney-client privilege.

Because the privilege protects the substance of communications, it may also be extended to protect communications by the lawyer to his client, agents or superiors or to other lawyers in the case of joint representation, *if* those communications reveal confidential communications.

*Id.* (emphasis added)

This decision places the Fourth Circuit clearly among the "strict construction courts" who "extend the privilege to legal opinions and communications from attorneys to clients only if and, arguably only to the extent, that the opinion contains within it, and arguably inextricably bound up to the legal opinion, the confidences made by the client to the lawyer that form the basis of the legal opinion." Epstein, Edna Selan, *The Attorney–Client Privilege and the Work Product Doctrine* 78 (5th ed.2007). The defendants, however, argue that the privilege "encompasses communications *from* the attorney *to* the client, including 'self initiated attorney communications intended to keep the client posted on legal developments and trends, including implications of client activity noticed by the attorney but with regard to which no written request for advice from the client has been found,'" quoting *Jack Winter, Inc. v. Koratron Co.,* 54 F.R.D. 44, 46 (N.D.Cal.

1971), and citing *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 37 (D.Md.1974). (Paper No. 214, 4.) The *Jack Winter* holding, of course, represents a broad construction of the privilege,[1] firmly rejected in the 1984 *U.S. v. (Under Seal)* decision. The Fourth Circuit has never cited either *Jack Winter* or *Burlington* with approval on this point. Moreover, the defendants did not (and could not) find any post 1984 authority in the Fourth Circuit for such an expansive view of the attorney-client privilege. Rather, as *United States v. (Under Seal)* makes clear, lawyer communications at issue here are only privileged insofar as they reveal confidential client communications. 748 F.2d at 874.

■ The burden is on the proponent of the privilege, here the defendants, to demonstrate "not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged[ (confidential) ] and that the privilege was not waived." *In Re: Grand Jury Subpoena*, 341 F.3d 331, 335 (4th Cir.2003) (citing *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir.1982)); *Accord United States v. Martin Marietta*, 886 F.Supp. 1243, 1244 (D.Md. 1995).

■ As the Fourth Circuit explained in *United States v. (Under Seal)*, "[i]n practical terms, this burden requires the proponent to explain, through *ex parte* submissions if necessary to maintain confidentiality, the significance or meaning of an otherwise cryptic document." 748 F.2d 871, 876 (4th Cir.1984).

When the requesting party challenges the sufficiency of the privilege assertion, the producing party bears the burden of establishing an evidentiary basis (such as an affidavit) to support each element of each privilege or work product protection sought, for each document. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 266–67 (D.Md. 2008).[2]

■ In support of their assertions of privilege, the defendants submit two affidavits of Benjamin Brown, the current Deputy Commissioner[3] for the Division of Pretrial Detention and Services.[4] Deputy Commissioner Brown states that he "found the information contained [in the subject memoranda] to be strictly confidential." (Paper No. 168–4, ¶ 4.) He further states that the memoranda are "interoffice communications that contain the opinions and recommendations of the Division's attorneys, which the Division sought as part of the Division's ongoing deliberative process in deciding what executive action, if any, was appropriate with respect to the Division's search practices of arrestees." (*Id.*) Finally, Deputy Commissioner Brown concludes that the "[p]roduction or disclosure of the memoranda would be contrary to the public interest ... thwart[ing] the policy and decision-making process of the Division." (*Id.* at¶ 5.) In his supplemental affidavit, he further states that "[t]he Commissioner and the senior staff did not disseminate the memoranda further down through the ranks of the Division's correctional staff and non-uni-

---

1. *See Epstein*, 84.

2. If the evidentiary basis is not established, the documents should be produced. *Id.* ("If ... the requesting party challenges the sufficiency of the assertion of privilege/protection, the asserting party ... bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege ... claimed for each document or category of document. A failure to do so warrants a ruling that the documents must be produced because of the failure of the asserting party to meet its burden."). *See also Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 409–10 (D.Md.2005); *Neighborhood Dev. Collaborative v. Murphy*, 233 F.R.D. 436, 442 (D.Md.2005); *Byrnes v. Jetnet Corp.*, 111 F.R.D. 68, 71 (M.D.N.C.1986)("It is incumbent upon the proponent to specifically and factually support his claim of privilege, usually by affidavit, to satisfy

this burden, and an improperly asserted privilege is the equivalent of no privilege at all.").

3. The Deputy Commissioner gave the first affidavit "under penalties of perjury that the contents ... are true to the best of [his] knowledge, information and belief", (Paper No. 168–4) and the second affidavit "under penalties of perjury that the contents of this supplemental affidavit are true to the best of my personal knowledge." (Paper No. 214–2.)

4. As Deputy Commissioner, a post he has occupied from May 2001 to September 2003, he says his duties are the oversight of "the administrative functions of the Division, including finance, human resources, procurement, technology and training" and "as needed and as directed by the Division's Commissioner, all other operations within the Division, such as custody and security." (Paper No. 168–4, ¶ 1.)

form personnel, and, to the best of my personal knowledge, this remains the case as of the date of the instant Supplement." (Paper No. 214–2, ¶ 2.)

It is the responsibility of the Court to construe the privilege strictly, *see In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (4th Cir.1984); *U.S. v. Jones,* 696 F.2d 1069 (4th Cir.1982); and allow protection of documents only if specific requirements are met.

These three memoranda set out the Assistant Attorney General's view of the law on strip searches, but none either explicitly or even implicitly suggest that the advice is in response to a request for legal advice. The memoranda bear one of the following: "ATTORNEY CLIENT COMMUNICATION DO NOT DIVULGE THE CONTENTS OF THIS MEMORANDUM TO ANYONE OTHER THAN THE ADDRESSEE", "ATTORNEY–CLIENT COMMUNICATION– DO NOT DISCLOSE THE CONTENTS OF THIS MEMORANDUM TO ANY PARTY OTHER THAN THE ADDRESSEES", or "CONFIDENTIAL AND PRIVILEGED ATTORNEY–CLIENT COMMUNICATION." Two of these memoranda preface a legal opinion with the writer's "understanding" of the BCBIC current policy on strip searches. The third memorandum states the writer's information as to "whether there is a blanket policy of visual strip searches for all detainees who are processed at BCBIC."

While the Deputy Commissioner states that the "opinions and recommendations of the Division's attorneys, which the Division sought as part of the Division's ongoing deliberative process," he does not produce a written request seeking this advice or provide the specific context for these memoranda of legal advice. Obviously, the Deputy Commissioner is unable to testify if the addressees asked for the legal advice given in these three memoranda or what confidential information, if any, the addressees gave the Assistant Attorneys General if legal advice was requested.

The Court rejects the applicability of the attorney-client privilege as to all three memoranda. First, and most importantly, a review of the memoranda themselves and the limited context of the communications provided by Deputy Commissioner Brown does not indicate that any of these memoranda were the result of a request for legal advice. Even if it were assumed that the legal advice in these memoranda were specifically requested by Commissioner Flanagan or Commissioner Smith, that does not shield the entirety of the memoranda, whether requested or not. The legal advice is not privileged; it is only the confidential client communications that are.

The question remains whether the writer's recitation of his understanding of the practice or policy of the Division regarding strip searches is privileged. The answer is no. There is no factual basis upon which to find that this information was provided by the client and with the expectation of confidentiality. The source of the information and the circumstances of its transmission to the Assistant Attorney General writers is unknown. The third criterion of *United Shoe* requires that the communication (to be privileged) must be transmitted to the attorney, by the client, without the presence of strangers for the purpose of securing a legal opinion or legal services. 89 F.Supp. at 358–59. It is impossible to know how the Assistant Attorney General writers came to their understandings of the Division strip search policy practice. While Deputy Commissioner Brown concluded that the "information contained [in the subject memoranda] to be strictly confidential in nature," (Paper No. 168–4), that does not address, much less demonstrate, that the strip search practice or policy information was transmitted "confidentially," *i.e.,* from client to attorney, without the presence of strangers for the purpose of obtaining a legal opinion or legal services.

Having reviewed the three memoranda at issue, they appear to be initiated by the OAG—not in response to any identified inquiry from the Commissioner and do not contain any confidential client information. The memoranda do contain a recitation of current policy but that type of information seems by its nature not confidential, nor was it characterized as such in the memoranda. Nor—as discussed above—did the defendants provide any factual support that the information was gathered from the client, in confidence and maintained in confidence.

The Deputy Commissioner's statement in his supplemental affidavit that these memoranda were treated as "wholly confidential" and were not disseminated beyond the Division's senior administrative staff "through the ranks of the Division's correctional staff and nonuniform personnel," (Paper No. 214–2, ¶ 2) is highly conclusory. He produces neither a written policy to that effect or a description of procedures to guarantee such confidentiality, such as locations where documents found, etc. Finally, it is not necessarily clear from his described duties as Deputy Commissioner that he would be in a position to know document control procedures. In any event, the Division's treatment of them as confidential is only one of the criteria for privilege; the rest have not been met. In sum, these memoranda enjoy no privilege under governing Fourth Circuit law.

### The Executive or Deliberative Privilege

■ Here, defendants argue that the memoranda are protected by the executive privilege—generated by the OAG to the Division's Commissioner, to aid him in his deliberations regarding the search practices of arrestees at BCBIC.[5] (Paper No. 168–2, 5–6.)

■ The executive or deliberative-process privilege [6] exists to protect the governmental decision-making process.[7] It protects from

5. Both parties cite Maryland and federal law in discussing this privilege. In *Hamilton v. Verdow*, this Court certified to the Court of Appeals of Maryland the question of whether an investigative report was protected by the executive privilege. 287 Md. 544, 414 A.2d 914 (1980) The Court of Appeals noted that "the relevance of Maryland law regarding privilege stems from the provisions of Rule 501, Federal Rules of Evidence, which provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

*Id.* at 918 n. 2. *Hamilton*, however, was before the federal court by diversity jurisdiction. *Id.* at 917. Because state law supplied the rule of decision in that case, the government's claim of executive privilege was properly decided in accordance with Maryland law.

Where the claim is before a federal court by federal question jurisdiction, however, state privilege law does not automatically govern. Fed. R.Evid. 501. *See United States v. Cartledge*, 928 F.2d 93, 95–96 (4th Cir.1991) (agreeing that "a federal court is not necessarily bound by a state rule of law creating an evidentiary privilege"); *Hartsell v. Duplex Prods., Inc.*, 895 F.Supp. 100, 102 (W.D.N.C.1995) ("State statutory privileges do not automatically apply to federal claims in federal court."). *Cf. United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir.1986) ("Rule 501 of the Federal Rules of Evidence requires federal courts to apply federal common law to assertions of privilege in criminal cases."). In federal ques-

tion cases, "a court must determine whether federal and state law conflict over the privilege at issue." *Hartsell*, 895 F.Supp. at 102. Where the privileges conflict, Fourth Circuit law dictates that courts balance the competing federal interests and principles of comity to determine which law controls the federal claim. *Cartledge*, 928 F.2d at 96; *see also Hartsell*, 895 F.Supp. at 102 (applying the principles set out in *Cartledge* in a civil action under Title VII).

The executive privilege in Maryland is substantially similar to the privilege under federal law. *Compare Hamilton*, 287 Md. at 558, 414 A.2d 914 ("The necessity for some protection from disclosure clearly extends to confidential advisory and deliberative communications between officials and those who assist them in formulating and deciding upon future governmental action.") *with Greene*, 93 F.R.D. at 659 *and Carl Zeiss*, 40 F.R.D. at 324 (discussed in main text above). *See also Hamilton*, 414 A.2d at 921–26 (relying on federal law, including *Carl Zeiss*, in determining the bounds of executive privilege under Maryland law). Thus, because the state and federal laws of executive privilege do not conflict, this Court has applied federal law to the privilege issues in this federal question litigation.

6. The terms "executive" and "deliberative process" are used interchangeably to describe the same executive privilege to withhold documents and information. Wright & Graham, Federal Practice and Procedure: Evidence § 5680; *see also N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286 (4th Cir.2004).

7. The privilege reflects the conviction that certain governmental decisions must be made in confidence to be effective. *Greene v. Thalhimer's Dep't Store*, 93 F.R.D. 657, 659 (E.D.Va.1982); *see also Sears Roebuck & Co.*, 421 U.S. at 150, 95 S.Ct. 1504 (noting that "[t]he point, plainly made ... is that the 'frank discussion of legal or policy matters' in writing might be inhibited if the dis-

disclosure advice, opinions and recommendations that are part of the decision-making process; the goal is "to prevent injury to the quality of agency decisions." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).[8] Specifically, "three policy purposes have consistently been held to constitute the bases for this privilege:"

> 1) to encourage open, frank discussions on matter of policy between subordinates and superiors; 2) to protect against premature disclosure of proposed policies before they are finally adopted; and 3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.

Justin D. Franklin et al., *Guidebook to The Freedom of Information and Privacy Acts* § 1:57 (2008); *see also Sears, Roebuck & Co.*, 421 U.S. at 151, 95 S.Ct. 1504. The pivotal question is: "whether the materials bear on the formulation or exercise of agency policy-oriented judgment ... [and] whether disclosure would tend to diminish candor within an agency." *City of Va. Beach v. U.S. Dep't Of Commerce*, 995 F.2d 1247, 1254 (4th Cir.1993)(internal citations omitted). "This privilege ... must be construed as narrowly as consistent with efficient Government operation." *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 773 (D.C.Cir.1988)(internal quotations omitted).

There are two traditional requirements for invocation of the privilege: that the communication be 1) predecisional, *i.e.*, "antecedent to the adoption of an agency policy ...," and 2) deliberative, *i.e.*, "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Franklin, *supra*, § 1:57 (internal citations omitted); *see also City of Va. Beach.*

For a communication to be predecisional, it does not have to be anchored to a specific, discrete, final decision. In *Sears, Roebuck & Co.*, the Supreme Court noted that:

> Our emphasis on the need to protect predecisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

421 U.S. at 153, 95 S.Ct. 1504; *Accord City of Va. Beach*, 995 F.2d at 1253; *see also* 1 McCormick On Evidence § 108 (6th ed.)("[T]he government is not required to identify a particular decision to which the communication contributed as long as the deliberative process involved and the role

---

cussion were made public; and that the 'decisions' and 'policies formulated' would be the poorer as a result"); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C.1966) (finding that "the privilege subserves a preponderation policy of frank expression and discussion among those upon whom rests the responsibility for making the determinations that enable government to operate"). The privilege "shields from disclosure 'intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Greene*, 93 F.R.D. at 659 (quoting *Carl Zeiss*, 40 F.R.D. at 324).

**8.** The deliberative process privilege has been specifically incorporated into the Freedom of Information Act ("FOIA") as an exception. 5 U.S.C. § 552(b)(5). Much of the federal case law discussing the privilege does so within the FOIA context. Maryland has its own Public Informa-

tion Act, and has incorporated a deliberative process privilege exception as well. The Maryland Attorney General's Public Information Act Manual states:

> Another example of information protected by a recognized privilege is confidential executive communications of an advisory or deliberative nature. *See Office of the Governor v. Washington Post Co.*, 360 Md. 520, 759 A.2d 249 (2000); *Hamilton v. Verdow*, 287 Md. 544, 414 A.2d 914 (1980); *Laws v. Thompson*, 78 Md. App. 665, 690–93, 554 A.2d 1264 (1989); 66 *Opinions of the Attorney General* 98 (1981). Not every executive communication is itself advisory or deliberative.

Office of the Maryland Attorney General, *Public Information Act Manual*, (December, 2000) *available at* www.oag.state.md.us/Forms/book.pdf. The parallel suggests that Maryland considers its executive privilege to be the same, or similar to the federal deliberative-process privilege.

played by the communication are identified.").

"While the government need not anchor documents to a single discrete decision amidst ongoing deliberative processes," the Fourth Circuit has warned that "an overly lax construction of the term 'predecisional' submerges the rule of disclosure under the exemption." *City of Va. Beach*, 995 F.2d at 1255 (citing *Assembly of Cali. v. United States Dep't of Commerce*, 968 F.2d 916, 921 (9th Cir.1992))("Any memorandum always will be 'predecisional' if [referenced] to a decision that possibly may be made at some undisclosed time in the future.") and *Coastal States*, 617 F.2d at 868 ("characterizing these documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word."). The Court in *City of Va. Beach* determined that certain documents were privileged, but only because they were drafted in conjunction with pending proceedings, antecedent to an identifiable outcome. 995 F.2d at 1255.

■ Evidence of the use of the subject document as a basis for discussion, prior to making a final decision, is considered a sign of its pre-decisional nature. In *Renegotiation Board v. Grumman Aircraft*, 421 U.S. 168, 185, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975), the reports were prepared by regional boards; they assessed whether government contractors had received excessive profits. *Id.* The reports were submitted to a higher board, with final decisionmaking authority, which used the regional board reports as a basis for discussion before making a final decision. *Id.* The Supreme Court noted that the "reports were prepared long before the Board reached its decision ...," and considered that important in determining that the reports were predecisional. *Id.* Likewise, in *City of Va. Beach*, the documents—aimed at determining whether and how to build a water pipeline—were drafted in conjunction with judicial and administrative proceedings where final decisions were anticipated. 995 F.2d at 1249–50.

Under the narrow construction of the privilege, legal memoranda—relied upon by recipients as statements of law and public policy—have not been found to be "predecisional." The D.C. Circuit in *Tax Analysts v.*

*Internal Revenue Service*, dealt with legal memoranda strikingly similar to those at issue in the instant case. 117 F.3d 607 (D.C.Cir.1997). The documents were labeled Field Service Advice Memoranda ("FSAs"), and they were issued by the Office of the Chief Counsel for the IRS to field personnel. *Id.* at 608–09. As in this case, the memoranda were intended to ensure "that field personnel apply the law correctly and uniformly," but nonetheless were not binding upon the field personnel. *Id.* The Court opined that the FSA's were routinely used by field personnel, who while not bound, rely heavily on the FSAs as statements of law. *Id.* at 617. "Rather than documents produced in the process of formulating policy, FSAs are themselves statements of an agency's legal position and, as such, cannot be viewed as predecisional." *Id.* While "FSAs may precede ... [decisions] in a particular taxpayer's case, they do not precede the decision regarding the agency's legal position. Representing the considered view of the Chief Counsel's national office on significant tax law issues, FSAs do not reflect the "give and take" that characterizes deliberative materials." *Id.*

■ As to the memoranda here, there is no indication that they were antecedent to a particular decision, nor part of a deliberative process intended to lead to a final result, or arrive at a final conclusion. Instead, they were *sua sponte* statements of law, and assessments of existing policy. In short, these memoranda lack that crucial characteristic shared by the documents in *Grumman* and *Virginia Beach*: a connection with an anticipated final outcome. Moreover, they are strikingly similar to the FSAs in *Tax Analysts*, in that they are legal memoranda, stating a legal position on existing policies, relied upon by the personnel who receive them. Under *Tax Analysts*, such documents are simply not predecisional. The Court Circuit in *Virginia Beach* warned against an "overly lax" construction of the term "predecisional;" the Court cannot determine that the OAG memoranda fall within that category. To label the memoranda "predecisional" would be to "submerge the rule of disclosure under the exemption." *Id.* If these memoranda are found "predecisional" any legal memoranda

on any subject in a state official's portfolio would qualify. The privilege is not that broad.

Neither are the memoranda part of a deliberative give-and-take to qualify for the privilege. Deliberative material "reflects the give-and-take of the consultative process ... by revealing the manner in which the agency evaluates possible alternative policies or outcomes." *City of Va. Beach*, 995 F.2d at 1253 (internal citations omitted). The Fourth Circuit has adopted the give-and-take test to determine whether documents are deliberative; thus, the deliberative-process privilege protects conversational documents—those intended to fuel a dialogue: "recommendations, draft documents, proposals, suggestions, and other subjective documents" that reflect personal opinion. *Id.* (Internal citations omitted). There was an actual back-and-forth in the documents in *City of Va. Beach* among agencies and parties, over the implications of a water pipeline system.

That back-and-forth is critical to a determination that documents and communications are deliberative. *See, e.g., Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1195 (D.C.Cir.1991)(stating that a document is deliberative if it "reflects the give-and-take of the consultative process")(internal citations omitted); *see also Tax Analysts*, 117 F.3d at 617 ("FSAs do not reflect the give-and-take that characterizes deliberative materials, [the] government's opinion about what is not the law and why it is not the law is as much a statement of government policy as its opinion about what the law is."). Simple statements of law, or evaluations of existing policies, do not enjoy the characteristics of that give-and-take process necessary to make them deliberative.

The D.C. Circuit, in *Coastal States v. Department of Energy*, dealt with legal memoranda prepared by Department of Energy Counsel, interpreting DOE regulations for field personnel. 617 F.2d 854, 857 (D.C.Cir. 1980). The memoranda were, as in *Tax Analysts*, not strictly binding on field personnel, but were responses to requests for guidance on the applicability of regulations to a set of facts. The Court in *Coastal States* stated that such memoranda are "more akin to a resource opinion about the applicability of existing policy to a certain state of facts[;]"

they [do not] reflect agency give-and-take of the deliberative process by which the decision itself is made." *Id.* at 868 (internal citations omitted). Contrarily, the documents at issue in *Virginia Beach* were part of a give-and-take where individuals and agencies exchanged opinions and concerns over the proposed water pipeline project. 995 F.2d at 1250. "The role played by the documents in issue" during the process largely determines whether the documents are predecisional and deliberative. *Coastal States*, 617 F.2d at 868.

The OAG memoranda do not reflect a give-and-take process. They are statements of law rather than contributions to the formulation of agency policies. There is no indication the memoranda were preceded by a request, or that responses were elicited for use in some meeting or other forum. They are not like the *City of Va. Beach* documents, which were part of a broader dialogue taking place among various parties.

Finally, the memoranda did not travel from subordinate to superior and were more akin to binding advice than suggestive or advisory recommendations. One of the main policy justifications for the privilege is to protect open and frank discussions between subordinates and superiors. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). The D.C. Circuit in *Puerto Rico* noted that the pertinent case law ... identifies two factors in determining whether this privilege is available: "the nature of the decisionmaking authority vested in the officer or person issuing the disputed document, and the relative positions in the agency's 'chain of command' occupied by the document's author and recipient." (internal citations omitted.) Here, the Assistant Attorneys General cannot be properly characterized as subordinate to the Commissioner. The Attorney General is the legal adviser to the Department of Correctional Services, but the Office of the Attorney General also has "general charge of the legal business of the State." MD.CODE ANN., STATE GOV'T, § 6–106 (West 2008). Courts have recognized that legal memoranda from counsel to client are qualitatively different than the "recommendations, draft documents, pro-

posals, suggestions and other subjective documents which reflect the personal opinions of the writer." *City of Va. Beach*, 995 F.2d at 1253. Lawyers operate in a different sphere, offering something different than simply another view on appropriate policy.

OAG opinions are more than advisory, and carry more weight than mere recommendations. As already mentioned above, the Court in *Tax Analysts* opined that even though legal memoranda were not strictly binding upon the recipients, the fact that field personnel regularly followed the advice contained in the FSA's suggested the documents were not predecisional or deliberative. 117 F.3d at 608–09. Courts often look "beneath formal lines of authority to the reality of the decisionmaking process ..." to determine where authority lies, and how often "recommendations" are complied with. *Schlefer v. United States*, 702 F.2d 233, 238 (D.C.Cir.1983). In *Schlefer*, legal memoranda titled CCOs were created by the Chief Counsel of the Maritime Administration, and given to Maritime Administration officials who requested the advice. *Id.* at 236. Decisionmaking authority technically remained with those requesting advice. *Id.* at 237. But the Court opined that the agency "failed to demonstrate that the Chief Counsel merely "advises" requesting officials on" legal matters. *Id.* at 241. Similarly, the OAG memoranda are legal memoranda—statements of law—which are more than mere suggestions; they represent the legal position of the Attorney General, and thus, the state, on legal issues. Review of the memoranda demonstrates that the AAGs were not offering their personal view on a policy question; rather they were offering a straightforward legal opinion to a non-lawyer, agency official. That agency official would ignore this legal opinion at his peril.

In his affidavit, Mr. Brown declares that "[t]he memoranda ... [were] sought as part of the Division's ongoing deliberative process in deciding what executive action, if any, was appropriate with respect to the Division's search practices of arrestees." (Paper No. 168–4, 2.) But a careful review of the documents has not convinced the Court that they are predecisional and deliberative. They are not antecedent to an particular decision, nor part of a particular policy process. They are not part of an internal discussion, or back-and-forth intended to arrive at a conclusion. They are not from a subordinate to a superior, despite the fact that the recipient agency may retain decisionmaking authority. "The privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Allnutt v. U.S. Dep't of Justice*, 2000 WL 852455, at *10 (D.Md. Oct. 23, 2000). The memoranda absolutely *do not* fall into that category of deliberative documents. Instead, they constitute the considered view of a sister agency on the law. While the Court recognizes the need for the OAG to engage in ongoing communications with its state agency clients, all of its communications are not privileged. The executive or deliberate privilege, like the attorney-client privilege is to be narrowly construed. These communications do not meet the test.

Accordingly, neither privilege applies and defendants shall produce the memoranda to plaintiffs no later than December 5, 2008.